EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Vivian Alina Díaz Ramos<br><br>Peticionaria<br><br>v.<br><br>Celestino José Matta Irizarry<br><br>Recurrido | Certiorari<br><br>2017 TSPR 156<br><br>198 ____ |

Número del Caso: CC-2016-1148

Fecha: 11 de agosto de 2017

Tribunal de Apelaciones:

> Región Judicial de San Juan y Caguas

Abogadas de la parte peticionaria:

> Lcda. María Santos Rivera
> Lcda. Yadira Santiago Vázquez

Abogadas de la parte recurrida:

> Lcda. Maritza González Ortiz
> Lcda. Carmen Emilia Mora Ruiz

Materia: Derecho de Familia - Improcedencia de la aplicación retroactiva de las Guías Mandatorias para computar las pensiones alimentarias en Puerto Rico, Reglamento 8529 de 30 de octubre de 2014.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Vivian Alina Díaz Ramos<br><br>Peticionaria<br><br>v.<br><br>Celestino José Matta Irizarry<br><br>Recurrido | **Núm.** CC-2016-1148 |

Opinión emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 11 de agosto de 2017

En esta ocasión nos corresponde determinar si procede la aplicación retroactiva de las *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico*, Reglamento 8529 de 30 de octubre de 2014 (*Guías de 2014*). Así, el presente caso nos requiere aclarar el concepto de *caso pendiente* en el contexto particular de una obligación de brindar alimentos a los hijos menores de edad.

I

La Sra. Vivian Alina Díaz Ramos (peticionaria) y el Sr. Celestino José Matta Irizarry (recurrido) procrearon tres (3) hijos durante su matrimonio. Posteriormente, durante el trámite de divorcio, se concedió a la señora Díaz Ramos la custodia de los menores de edad y se fijó una pensión alimenticia de $1,137.50 quincenales al amparo de las *Guías para determinar y modificar las pensiones alimentarias en Puerto Rico*, Reglamento 7135 de 2006, de 24 de abril de 2006 (*Guías de 2006*).

Pasado más de tres (3) años, el 9 de julio de 2012, la señora Díaz Ramos presentó una solicitud de revisión de la pensión alimenticia. Con el fin de fijar la nueva pensión, la Examinadora de Pensiones Alimentarias (EPA) celebró catorce (14) vistas en las cuales recibió prueba sobre el ingreso de ambos padres, los nuevos gastos universitarios de dos (2) de los hijos y la disminución de las relaciones paterno-filiales. Así pues, ante los cambios en las necesidades de los menores, la EPA fraccionó la revisión en ocho (8) periodos.[1]

Finalmente, la EPA rindió un *Informe* el 18 de abril de 2016 en el cual recomendó computar la pensión según lo dispuesto en la Guía vigente para cada periodo. Es decir, la pensión para los primeros cinco (5) periodos -comprendidos desde el 9 de junio de 2012 al 31 de noviembre de 2014- se computaron a tenor con lo dispuesto en las *Guías de 2006* y los restantes tres (3) periodos -comprendidos desde el 1 de diciembre de 2014 en adelante-se calcularon en virtud de las *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico*, Reglamento 8529 del 30 de octubre de 2014 (*Guías de 2014*).[2]

---

[1] Los periodos fueron desglosados de la siguiente manera: (1) del 9 de julio de 2012 al 31 de diciembre de 2012; (2) del 1 de enero de 2013 al 31 de diciembre de 2013; (3) del 1 de enero de 2014 al 31 de mayo de 2014; (4) del 1 de junio de 2014 al 31 de octubre de 2014; (5) del 1 de noviembre de 2014 al 31 de noviembre de 2014; (6) del 1 de diciembre de 2014 al 31 de diciembre de 2014; (7) del 1 de enero de 2015 al 31 de mayo de 2015; (8) del 1 de junio de 2015 en adelante.
[2] La EPA consignó en su *Informe* las siguientes recomendaciones:

El 19 de abril de 2016, el Tribunal de Primera Instancia emitió una *Resolución* en la cual acogió las precitadas recomendaciones de la EPA.

Así las cosas, el 29 de abril de 2016, la señora Díaz Ramos presentó ante el foro primario dos (2) mociones. En la moción intitulada *Cómputo de retroactivo de pensión alimentaria y solicitud de resolución ordenando pago* indicó que, conforme al desglose de la pensión alimenticia que debió pagar el señor Matta Irizarry desde el 2012 a mayo de 2015, éste adeudaba $30,836.41. Por otra parte, la segunda moción urgió el cobro de honorarios de abogados.

---

Del 9 de julio de 2012 al 31 de diciembre de 2012, el PNC [Padre No Custodio] debió haber pagado una pensión alimentaria de $3,754.00 mensuales.

Del 1ro de enero de 2013 a 31 de diciembre de 2013, el PNC debió haber pagado una pensión alimentaria de $3,574.00 mensuales.

Del 1ro de enero de 2014 al 31 de mayo de 2014, el PNC debió haber pagado una pensión alimentaria de $3,800.00 mensuales.

Del 1ro de junio de 2014 al 31 de octubre de 2014, el PNC debió haber pagado una pensión alimentaria de $3,050.00 mensuales.

Del 1ro de noviembre de 2014 al 31 de noviembre de 2014, el PNC debió haber pagado una pensión alimentaria de $2,846.00 mensuales.

Del 1ro de diciembre de 2014 al 31 de diciembre de 2014, el PNC debió haber pagado una pensión alimentaria de $1,572.00 mensuales.

Del 1ro de enero de 2015 al 31 de mayo de 2015, el PNC debió haber pagado una pensión alimentaria de $1,680.00 mensuales.

Del 1ro de junio de 2015 en adelante, el PNC deberá para una pensión alimentaria de $2,162.00 mensuales. Véase *Informe* de 18 de abril de 2016. Véase *Informe de la EPA*, en la pág. 16.

Ante esto, el señor Matta Irizarry presentó, el 3 de mayo de 2016, una *Moción de reconsideración* en la cual indicó que las *Guías de 2014* debieron retrotraerse a todos los periodos en revisión toda vez que las nuevas guías aplican a los *casos pendientes*. En vista de ello, alegó que su caso aún estaba en etapa de descubrimiento de prueba ante la EPA cuando advino la fecha de efectividad de las *Guías de 2014*. Consecuentemente, solicitó al foro primario que recalculara la pensión correspondiente de los periodos comprendidos desde el 9 de julio de 2012 al 30 de noviembre de 2014 al amparo de las *Guías de 2014*. No obstante, el foro primario denegó tal solicitud mediante una *Resolución* notificada el 8 de junio de 2016.

Por estar en desacuerdo, el señor Matta Irizarry presentó un recurso de apelación ante el Tribunal de Apelaciones el 1 de julio de 2016. El foro apelativo intermedio notificó, el 4 de octubre de 2016, la *Sentencia* en la cual concluyó que las *Guías de 2006* fueron derogadas, pues así lo dispuso expresamente el artículo 5 de las *Guías de 2014*.[3] Además, puntualizó que el artículo 29 de las *Guías de 2014* establece que estas aplicarán a todo *caso pendiente*. De esta forma, revocó el dictamen recurrido y

---

[3] El artículo 5 de las *Guías de 2014* dispone lo siguiente: "Con la aprobación del presente Reglamento queda derogado el Reglamento Núm. 7135 titulado Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico de 24 de abril de 2006. Se dispone que las pensiones alimentarias que se hayan fijado conforme al Reglamento Núm. 7135 solo serán revisadas o modificadas si se cumplen con los criterios establecidos en el Artículo 19 de la Ley". *Guías de 2014*, *supra*, en la pág. 2.

devolvió el caso al Tribunal de Primera Instancia para que realizara un nuevo cómputo de la pensión alimenticia retrotrayendo las *Guías de 2014* a todos los periodos en controversia.

Ante este mandato del Tribunal de Apelaciones, la peticionaria presentó una *Moción de reconsideración* el 17 de octubre de 2016, mas ésta fue denegada el 4 de noviembre de 2016. Asimismo, el 4 de noviembre de 2016 la peticionaria recibió la notificación de una *Resolución y Orden* emitida por el Tribunal de Primera Instancia en la que se computó la pensión alimenticia para todos los periodos adeudados al amparo de las *Guías de 2014*.

Por estar inconforme, la señora Díaz Ramos compareció ante este Tribunal mediante una *Moción en auxilio de jurisdicción* y un recurso de *certiorari*. La peticionaria solicitó la paralización de los procedimientos relacionados con la aplicación retroactiva de las *Guías de 2014*. Arguyó que la referida *Resolución y Orden* fue emitida prematuramente, pues no había transcurrido los diez (10) días laborables luego de haber advenido final y firme la decisión del Tribunal de Apelaciones.[4]

Por su parte, en el recurso de *certiorari* señaló que la aplicación retroactiva de las *Guías de 2014* a todos los

---

[4] La regla 84 (E) del Tribunal de Apelaciones dispone lo siguiente respecto a las mociones de reconsideración: "transcurridos diez (10) días laborables de haber advenido final y firme la decisión del Tribunal de Apelaciones, el Secretario (a) enviará el mandato al Tribunal de Primera Instancia o a la agencia correspondiente, junto con todo el expediente original cuando este haya sido elevado". 4 LPRA Ap. XXII-B, R. 84.

periodos en controversia supuso una reducción de aproximadamente $36,500.00, entiéndase, un treinta y ocho por ciento (38%) de la pensión alimenticia de los tres (3) menores de edad.[5] Por esto, la peticionaria planteó que erró el Tribunal de Apelaciones al revocar la *Sentencia* dictada por el Tribunal de Primera Instancia y haber ordenado un nuevo cómputo aplicando retroactivamente las *Guías del 2014* a todos los periodos adeudados. Además, arguyó que la determinación del foro apelativo intermedio contravino el principio de la irretroactividad de las leyes y lo resuelto en *Torres Rodríguez v. Carrasquillo Nieves*, 177 D.P.R. 728 (2009).

---

[5] Desglose de la reducción en la pensión alimenticia mensual tras la aplicación retroactiva de las *Guías de 2014* a los primeros cinco periodos.

| Periodo* | Pensión alimenticia mensual según Sentencia del TPI del 19 de abril de 2016 | Pensión alimenticia mensual según la Resolución y Orden del TPI del 2 de febrero de 2016 | Diferencia mensual (por ciento de disminución) |
|---|---|---|---|
| 9/julio/2012-31/diciembre/2012 | $3,754.00 | $2,497.00 | -$1,257.00 (-33.5%) |
| 1/enero/2013-31/diciembre/2013 | $3,574.00 | $2,452.00 | $1,122.00 (-31.4%) |
| 1/enero/2014-31/mayo/2014 | $3,800.00 | $2,457.00 | $1,343.00 (-35.3%) |
| 1/junio/2014-31/octubre/2014 | $3,050.00 | $1,580.00 | $1,470.00 (-48.2%) |
| 1/noviembre/2014-31/noviembre/2014 | $2,846.00 | $1,376.00 | $1,470.00 (-51.7%) |

*Cabe aclarar que en la precedente tabla no se incluyeron los tres (3) periodos comprendidos desde el 1 de diciembre de 2014 en adelante, puesto que sobre ellos no existe controversia en cuanto a la aplicabilidad de las *Guías de 2014*.

Examinado los recursos, el 15 de diciembre de 2016 declaramos "con lugar" la *Moción en auxilio de jurisdicción* y concedimos a las partes un término de veinte (20) días para que mostraran causa por la cual debíamos expedir el presente recurso de *certiorari*. Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

En nuestro ordenamiento jurídico, todo padre y madre tiene "el deber de alimentar [a sus hijos no emancipados], tener[l]os en su compañía, educarlos e instruirlos con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho". Cód. Civ. P.R. Art. 153, 31 L.P.R.A. Sec. 601. Es de tal envergadura esta obligación que hemos reconocido que la reclamación de alimentos es constitutiva del derecho a la vida protegido por la Constitución de Puerto Rico. Véase *Torres Rodríguez v. Carrasquillo Nieves*, 177 D.P.R. 728 (2009); *Argüello v. Argüello*, 155 D.P.R. 62 (2001). Ello pues, este derecho está:

> [D]estinado a proteger la supervivencia de la persona, su desarrollo biológico y su formación, a fin de que ésta pueda insertarse activamente en la sociedad y paralelamente generarse la oportunidad de concretar su proyecto de vida que comprenda la realización de la persona en el ámbito material y espiritual". Cecilia G. González Fuentes, *Alimentos: El derecho de alimentos desde la perspectiva de los derechos fundamentales* 15 (Perú, 2007).

En calidad de servir como garante de este derecho, el legislador creó la *Agencia para el Sustento de Menores* (ASUME) cuya política pública es procurar que los padres

legales cumplan con su deber de mantener a sus hijos menores de edad. Véase *Ley orgánica de la Administración para el Sustento de Menores*, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 502. (Ley orgánica de la ASUME). Para lograr la consecución de tal objetivo, la Asamblea Legislativa delegó al administrador de la ASUME la facultad de adoptar reglamentos dirigidos a instrumentar el cómputo de las pensiones alimenticias. Véase 8 L.P.R.A. sec. 518. En virtud de esta facultad, el 29 de octubre de 2014, la ASUME promulgó las nuevas *Guías de 2014* cuyo propósito es "establecer las guías mandatorias para determinar las pensiones alimentarias de los y las alimentistas menores de edad en Puerto Rico, basadas en criterios numéricos y descriptivos, los cuales faciliten el cómputo de la cuantía de la obligación alimentaria". Artículo 3, *Guías de 2014, supra,* en la pág. 1.

Sin embargo, la puesta en vigor de las *Guías de 2014* ha producido dictámenes dispares. Para comprender este conflicto interpretativo es necesario examinar el artículo 29 de estas *Guías*, el cual dispone lo siguiente:

> Este Reglamento entrará en vigor a los 30 días de su presentación ante el Departamento de Estado, según establecido en la Ley de Procedimiento Administrativo Uniforme. El mismo aplicará a todos los casos que estén pendientes y a los que se presenten con posterioridad a la fecha de su vigencia. Artículo 29, *Guías de 2014*, *supra*, en la pág.33.

Sobre este particular, diversos foros inferiores han optado por una aplicación prospectiva de las *Guías de 2014*, pues el texto del precitado artículo indica que éstas

"entrará[n] en vigor a los 30 días de su presentación ante el Departamento de Estado". Por otra parte, en un sinnúmero de dictámenes, el Tribunal de Apelaciones -incluyendo el panel adjudicador de la *Sentencia* aquí recurrida- concluyó que las *Guías de 2014* son de aplicación retroactiva en consideración a que la segunda oración del artículo 29 dispone que éstas "aplicará[n] a todos los casos que estén pendientes".[6]

Asimismo, alertamos que el concepto de *caso pendiente* ha sido interpretado de forma conflictiva. En ciertas instancias, se define como aquel en que no ha advenido final y firme una sentencia o resolución. Por lo tanto, un caso aún en etapa apelativa se consideraría como uno pendiente.[7] Sin embargo, otros adjudicadores han definido *caso pendiente* como aquel que ha quedado sometido para la dilucidación ante el Tribunal, entiéndase, luego de haber concluido el desfile de la prueba.[8]

---

[6] Véase *Rivera Umpierre v. García Collazo*, KLAN201300818 (2015); *Tirado Pérez v. Serrano Nieves*, KLAN201400770 (2015); *Castrodad Santos v. Negrón Cortés*, KLAN201500560 (2015); *Colón Álvarez v. Ramírez Figueroa*, KLAN201600411 (2016).

[7] En *Colón Álvarez v. Ramírez Figueroa,* KLAN 201600411 (2016), el foro apelativo intermedio recurrió al uso y costumbre para significar el concepto de *caso pendiente,* puesto que el Reglamento 8529 no dispone nada al respecto. Por ello, concluyó que "'caso pendiente' se refiere a un caso en que todavía no se haya celebrado vista evidenciaria o que todavía no esté sometido". *Colón Álvarez, en la pág.*7. Asimismo, determinó "que los casos pendientes a los cuales hace referencia el Reglamento 8529 se refiere a todo caso en donde no haya recaído sentencia o resolución final; es decir aquellos casos que no hayan concluido". *Id.*

[8] Véase *Meaux Rivera v. García Aguirre*, KLAN201500934 (2015).

Ahora bien, este Tribunal se enfrentó a este conflicto interpretativo anteriormente. Destacamos pues, que en *Torres Rodríguez* examinamos de forma particular el asunto de la retroactividad de las *Guías de 2006*. Mediante estas *Guías* se introdujo, por primera vez, la cláusula de ajuste de la pensión por ampliación de las relaciones filiales. Ante esto, el padre no custodio alegó que el ajuste a la pensión alimenticia básica -computada en virtud de las *Guías de 2006*- debía retrotraerse al 2003, año en el cual el tribunal amplió sus relaciones paterno-filiales.[9] El conflicto interpretativo sobre la aplicación retroactiva de las *Guías de 2006* se circunscribió al lenguaje del artículo 12, disposición legal idéntica a la que hoy procedemos a dirimir.[10]

Con tal de disponer de aquella controversia, este Tribunal optó por emplear un examen para determinar la retroactividad de las *Guías de 2006*. Este requiere evaluar: "en primer lugar, si el reglamento tiene efecto retroactivo; en segundo lugar, si la agencia que lo adopta tiene la facultad delegada de otorgarle efecto retroactivo

_____

[9] En este caso, el Tribunal de Primera Instancia revisó la pensión para los periodos comprendidos desde el 1997. *Torres Rodríguez*, 177 D.P.R. en la pág. 736.

[10] El referido artículo 12 dispuso lo siguiente:

> Este Reglamento entrará en vigor a los treinta (30) días de su presentación ante el Departamento de Estado, según establecido en la Ley de Procedimiento Administrativo Uniforme. El mismo aplicará a todos los casos que estén pendientes y a los que se presenten con posterioridad a la fecha de su vigencia. Artículo 12, *Guías de 2006*, *supra*, en la pág. 31.

a ese reglamento y en tercer lugar, si el efecto retroactivo del reglamento es válido". *Torres Rodríguez,* 177 D.P.R. en las págs. 758-759 (2009).

Tras la aplicación de este análisis concluimos que "el Artículo 12 del Reglamento Núm. 7135, *supra*, establec[ió] de forma palmaria que su aplicación debe ser prospectiva, al exponer que su entrada en vigor será a los treinta días de su presentación en el Departamento de Estado sin especificar si tendr[ía] efecto retroactivo". *Id.,* en la pág. 761. Además, al analizar los poderes delegados a la ASUME, concluimos que no surgía de la *Ley Orgánica* de la referida agencia la intención expresa ni tácita para que ésta creara reglamentos de aplicación retroactiva. Por el contrario, enfatizamos que:

> La intención legislativa no fue permitir que la ASUME pudiera promulgar reglamentos de aplicación retroactiva que pudieran menguar de alguna forma las pensiones alimenticias. Esto es así, porque lo más importante para el legislador es el bienestar del menor, el cual se podría afectar ante la disminución de la pensión alimenticia, aunque se trate de un ajuste. En ese sentido, no podemos ni debemos refrendar la aplicación retroactiva de un reglamento que a todas luces no puede comportar tal pretensión. *Id.,* en la pág. 763.

Sin embargo, en aquel entonces este Tribunal nada dispuso acerca del concepto *caso pendiente* en el contexto de una obligación de suplir alimentos a los menores de edad.

A pesar de nuestro dictamen en *Torres Rodríguez*, en el presente caso, el Tribunal de Apelaciones –al igual que el recurrido- puntualizan que las *Guías de 2014* pueden ser aplicadas retroactivamente. Además, el foro apelativo

intermedio subraya que la controversia ante nuestra consideración se distingue de lo resuelto en *Torres Rodríguez,* pues se circunscribió únicamente a si la cláusula de ajuste a la pensión alimenticia por las relaciones paterno-filiales, introducidas por primera vez mediante las *Guías de 2006*, era de aplicación retroactiva.

Por el contrario, la peticionaria reafirma que la retroactividad es la excepción en nuestro ordenamiento jurídico y que en *Torres Rodríguez* se resolvió exactamente la presente controversia. Ello pues, el texto del artículo 12 de las *Guías de 2006* y el artículo 29 de las *Guías de 2014* son un calco exacto. Asimismo, el análisis empleado por este Tribunal para concluir que la ASUME carecía de facultad para promulgar reglamentos con efecto retroactivo fue extensivo a todo el cuerpo reglamentario y no meramente a la cláusula de ajuste a la pensión alimentaria por las relaciones paterno-filiales como arguyó el recurrido.

**III**

**A.**

Como es sabido, la obligación de suplir alimentos está revestida por un alto interés público, pues el Estado procura que mediante esta prestación económica los menores de edad logren la aptitud de valerse por sí mismos. Hoy día, esta obligación abarca la satisfacción tanto de las necesidades vitales como del abrigo, la habitación, la salud, la educación, entre otros. Ante la confluencia de estos elementos que propenden al desarrollo óptimo del ser

humano, surge el desdoblamiento de la obligación de brindar alimentos, entiéndase, la distinción entre la obligación jurídica básica y las obligaciones de cumplimiento periódico. Adoración Padial Albás, *La obligación de alimentos entre parientes* 181-182, Bosh, España (1997).

En materia de los alimentos entre parientes, la obligación jurídica básica surge de la relación habida "entre alimentante y alimentista, de naturaleza estrictamente personal". *Id.*, en la pág. 182. Ahora bien, el cumplimiento con esta obligación jurídica básica genera, a su vez, obligaciones periódicas cuyo contenido se adscribe "a lo indispensable para el sustento" del alimentista. *Id.*

Es por ello que, diversos estudiosos de la materia coinciden en que la obligación de brindar alimentos es una personalísima, imprescriptible, de carácter recíproco, relativa, variable y no es susceptible de ser satisfecha mediante la figura de la solidaridad. Véase Manuel Medina de Lemus, *Derecho Civil: Derecho de Familia* 33, T. IV (2005); González Fuentes, *supra*, en la *pág.* 14.

De las precitadas características, la *relatividad* y *variabilidad* manifiestan la susceptibilidad de cambio en el contenido de la obligación por el mero paso del tiempo, lo cual hace de este deber uno *sui generis*. Veamos.

Por *relatividad* debemos entender que la configuración de la prestación requiere evaluar tanto las necesidades del alimentista como las posibilidades económicas del obligado.

Véase Medina de Lemus, *supra*, en la pág. 33. Es decir, la obligación se circunscribe a un balance entre las necesidades del menor de edad y el principio de proporcionalidad el cual considera el patrimonio de ambos padres del alimentista. Por su parte, la *variabilidad* se refiere a que es un derecho condicional y variable, lo que provoca que en determinados supuestos se aumente o se reduzca la cuantía de esta obligación. *Id.*

Ante la naturaleza cambiante del contenido de la obligación de suplir alimentos, surge el esquema de revisiones periódicas. En virtud de la *Ley Orgánica de la ASUME*, las pensiones se revisan o se modifican cada tres (3) años. Véase 8 L.P.R.A. sec. 518. Además, cabe señalar que, las *Hojas de trabajo para computar pensiones alimentarias*, se completan por intervalos de tiempo de un año o de cierto espacio de tiempo en el cual surgió un cambio sustancial en las necesidades del menor o en la proporcionalidad por la que responde cada padre alimentante.[11] Mediante la revisión de las pensiones por intervalos de tiempo se facilita su cómputo. De esta forma el procedimiento aritmético empleado para este cálculo puede abonar a la fijación de pensiones más armónicas, pues

---

[11] El formulario intitulado *Hojas de trabajo para computar pensiones alimentarias* es utilizado para evaluar las necesidades de los menores y calcular la proporción del alimento por el cual responde cada padre. Disponible en: https://www2.pr.gov/agencias/asume/informacion/Documents/Ho ja%20de%20trabajo%20para%20computar%20pensiones%20alimentar ias%20Basadas%20en%20el%20Reglamento%208529.pdf (última visita, 24 de marzo de 2017).

este diseño de revisiones facilita la adecuación entre la obligación y la realidad que le circunda.

**B.**

En vista de que la presente controversia versa sobre un asunto de temporalidad, procedemos a examinar las disposiciones del Derecho transitorio aplicables. En primer lugar, es necesario enfatizar que en nuestro ordenamiento jurídico es norma general que "las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario" Cód. Civ. P.R. Art. 3, 31 L.P.R.A. Sec. 3. Esta norma responde a que "[e]l principio de irretroactividad es expresión o efecto del valor de seguridad jurídica. . . . A través del referido principio . . . se trata de mantener un estado de certeza e inamovilidad de las situaciones a fin de que los sujetos actúen amparados por una determinada legislación...." Beatriz Verdera Izquierdo, *La irretroactividad: problemática general* 32, (Dykinson, Madrid, 2006). Consecuentemente, la retroactividad de las leyes es una excepción en nuestro ordenamiento, por lo que la intención del legislador sobre tal efecto debe relucir del propio cuerpo normativo ya sea de forma tácita o expresa. Véase *Torres Rodríguez v. Carrasquillo Nieves*, 177 D.P.R. 728 (2009); *Asoc. Maestros v. Depto. Educación*, 171 D.P.R. 640 (2007); *Consejo Titulares v. Williams Hospitality*, 168 D.P.R. 101 (2006).

Por otra parte, cabe puntualizar que el principio de la irretroactividad de las leyes se extiende a la

aplicación de los reglamentos administrativos, pues "[l]a palabra 'Leyes' utilizada por el artículo 3 [del Código Civil] ha de entenderse en sentido amplio, por lo que el principio de irretroactividad deberá aplicarse a las demás normas jurídicas; por ejemplo, a las disposiciones administrativas". *Torres Rodríguez*, 177 D.P.R. en la pág. 758. Véase, además, F. Bonet Ramón, *Compendio de Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1959, T. I, en la pág. 203.

A pesar de que el principio de la irretroactividad aparenta solucionar las problemáticas surgidas de la sucesión de las leyes en el tiempo, la realidad es que no existe una fórmula universal para ello. Verdera Izquierdo, *supra,* en la pág. 131. Esto es así, puesto que "la aplicación de una regla aparentemente tan sencilla, se encuentra una de las más graves dificultades que ofrece la ciencia del Derecho: la de determinar con precisión qué es lo que debe considerarse como pasado respecto a la nueva ley". Pascual Fiore, *De la irretroactividad e interpretación de las leyes* 30, (4ta ed., Ed. Reus, Madrid, 2009).

Para la debida adjudicación de la presente controversia, es meritorio examinar los diversos supuestos de retroactividad. El Derecho transitorio ha elaborado diversas clasificaciones, entre las cuales se encuentra la categoría según el grado de retroactividad. Esta categorización se basa en el efecto de retroactividad,

entiéndase, si es de grado máximo, medio o mínimo. *Verdera Izquierdo, supra,* en la pág. 85.

La retroactividad de grado máximo es aquella en la que "[l]a ley nueva se aplica incluso a las consecuencias de actos y relaciones jurídicas realizados bajo la vigencia de la anterior". *Id.,* en la pág. 87. Por su parte, la retroactividad en grado medio surge cuando:

> "[l]a ley retroactiva se aplica a efectos que ya existían o habían nacido durante la vigencia de la ley derogada, pero que han de ejecutarse después de la entrada en vigor de la nueva norma. Consecuentemente, la nueva ley es aplicada a efectos aún no consumados de situaciones que nacieron al amparo de la norma antigua". *Id.,* en la pág. 90.

Finalmente, la retroactividad de grado mínimo surge cuando "[l]a nueva ley se aplica a los efectos de una relación jurídica regulada según la vigencia de la legislación anterior, pero sólo a los que nazcan después de estar vigente la nueva ley, sustituyendo desde entonces la nueva regulación a la antigua". *Id.,* en la pág. 91.

## IV

Como bien anticipamos, la señora Díaz Ramos solicitó, el 9 de julio de 2013, la revisión de la pensión alimenticia de los tres (3) menores de edad procreados con el señor Matta Irizarry. Sin embargo, la revisión de la pensión estuvo ante la consideración de la EPA y el Tribunal de Primera Instancia durante más de tres (3) años, periodo en el cual hubo un cambio en las guías para fijar las pensiones. La ASUME promulgó las *Guías de 2014* el 30 de octubre de 2014, cuya fecha de efectividad sería,

específicamente, el 29 de noviembre de 2014. A esos efectos, la EPA recomendó en su *Informe* del 18 de abril de 2016, fijar la pensión utilizando las guías que estuviesen vigentes para cada periodo. Por lo tanto, los primeros cinco (5) periodos en revisión se computaron al amparo de las *Guías de 2006* y los restantes periodos según lo establecido en las *Guías de 2014*. Finalmente, el 19 de abril de 2016, el Tribunal de Primera Instancia emitió una *Resolución* en la cual acogió las recomendaciones de la EPA.

Por hallarse inconforme, el señor Matta Irizarry recurrió al Tribunal de Apelaciones, foro que determinó que las *Guías de 2014* aplican retroactivamente a todos los periodos en controversia. Ante este dictamen -lo cual supuso una reducción del treinta y ocho por ciento (38%) de la pensión de los menores- la señora Díaz Ramos acudió ante este Tribunal.

Ahora bien, para disponer correctamente de la presente controversia, es necesario aplicar el análisis de la irretroactividad de los reglamentos administrativos acogido en *Torres Rodríguez* a los hechos antes esbozados.

El primer criterio a evaluarse es si el reglamento en cuestión tiene efecto retroactivo. De la lectura del artículo 29 de las *Guías de 2014* surge claramente que estas entrarán "en vigor a los treinta (30) días de su presentación ante el Departamento de Estado".[12] Artículo 29,

---

[12] En *Torres Rodríguez* concluimos que no era de aplicación retroactiva, puesto que el texto no aludió expresamente a su aplicación retroactiva.

*Guías de 2014*, *supra*, en la pág. 33. Sin embargo, el mencionado artículo también dispone que "aplicará a todos los casos que estén pendientes y a los que se presenten con posterioridad a la fecha de su vigencia". Según reseñamos, el concepto de *caso pendiente* ha sido una de las principales fuentes de la disparidad adjudicativa en los foros inferiores ya que para algunos éste revela la intención tácita del legislador para impartirle efecto retroactivo al reglamento. Para disipar cualquier duda sobre este particular, procedemos a analizar el concepto *caso pendiente* en el contexto de una obligación de suplir alimentos.

Como bien detallamos, la obligación de dar alimentos es una particular, sensitiva al devenir del tiempo, por lo que la *Ley Orgánica de la ASUME* diseñó un mecanismo para el cómputo de las pensiones basado en un análisis de periodicidad. De esta forma, se pretende fijar pensiones que, con mayor certeza, reflejen o se ajusten a los cambios en las necesidades del menor o en la capacidad económica de los alimentantes.

Asimismo, cabe recordar que la acción mediante la cual se inicia una revisión de pensiones alimenticias surge de la obligación jurídica básica. No obstante, lo que se modifica en este proceso es el contenido de las obligaciones periódicas de brindar alimentos.

Es por ello que, al considerar el desdoblamiento jurídico de la obligación de brindar alimentos, es forzoso concluir que la multiplicidad de las obligaciones que

fraccionan el tiempo permite el cálculo de las pensiones según la normativa vigente para cada periodo. Por consiguiente, en este contexto particular, *caso pendiente* no implica retroactividad.

En segundo lugar, debemos analizar el criterio de si a la agencia administrativa le fue delegada la facultad para aprobar un reglamento con efecto retroactivo. En *Torres Rodríguez*, concluimos que del artículo 19 de la *Ley Orgánica de la ASUME*, no surge que la Asamblea Legislativa le haya delegado, de forma tácita o expresa, este poder. Al presente, la referida *Ley* no ha sido enmendada para investir a la ASUME con el poder para promulgar reglamentos con efecto retroactivo.

Tras estas conclusiones, resulta inmeritorio examinar el tercer criterio del análisis de la irretroactividad de los reglamentos administrativos. Finalmente, concluimos que –al considerar la naturaleza de la obligación de suplir alimentos, la transitoriedad del asunto y el diseño jurídico dispuesto por la *Ley Orgánica de la ASUME*– corresponde el cálculo de las pensiones en virtud de la normativa vigente para cada periodo en controversia.

Por ende, procede el cálculo de la pensión alimenticia según lo dispuesto en la *Resolución* emitida por el Tribunal de Primera Instancia el 19 de abril de 2016. En otras palabras, los primeros cinco (5) periodos –comprendidos desde el 9 de junio de 2012 al 31 de noviembre de 2014– se computan en virtud de las *Guías de 2006* y los restantes

tres (3) periodos -comprendidos desde el 1 de diciembre de 2014 en adelante- se calculan al amparo de las *Guías de 2014*.

**V**

Por los fundamentos que anteceden, expedimos el presente recurso y concluimos que erró el Tribunal de Apelaciones. Por tanto, se revoca la *Sentencia* aquí recurrida y se confirma la *Resolución* del Tribunal de Primera Instancia emitida el 19 de abril de 2016.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Vivian Alina Díaz Ramos<br><br>Peticionaria<br><br>v.<br><br>Celestino José Matta Irizarry<br><br>Recurrido | **Núm.** CC-2016-1148 |

SENTENCIA

San Juan, Puerto Rico, a 11 de agosto de 2017

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, expedimos el presente recurso y concluimos que erró el Tribunal de Apelaciones. Por tanto, se revoca la *Sentencia* aquí recurrida y se confirma la *Resolución* del Tribunal de Primera Instancia emitida el 19 de abril de 2016.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco y los Jueces Asociados señor Kolthoff Caraballo y señor Rivera García concurren sin opinión escrita. El Juez Asociado señor Feliberti Cintrón inhibido.


                              Juan Ernesto Dávila Rivera
                           Secretario del Tribunal Supremo