Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| ÁNGEL MORALES FRÍAS<br><br>Recurrido<br><br>KIANA KRYSTAL CASTILLO MAYOR<br><br>Peticionaria<br><br>EX PARTE | TA2025CE00620 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala de Relaciones de Familia y Asuntos de Menores<br><br>Caso número: BY2021RF00219<br><br>Sobre: Divorcio |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## S E N T E N C I A

En San Juan, Puerto Rico, a 10 de noviembre de 2025.

Comparece la peticionaria Kiana Cristal Castillo Mayor mediante el recurso de epígrafe y nos solicita que revoquemos dos determinaciones emitidas y notificadas por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 22 de septiembre de 2025; a saber, la *Minuta Resolución* correspondiente a una vista llevada a cabo el 16 de septiembre de 2025 y una *Resolución* emitida el 22 de septiembre de 2025. Ambos dictámenes fueron notificados el 22 de septiembre de 2025.

Por los fundamentos que se exponen a continuación, se acoge el presente recurso como una apelación, para fines de la revisión de la *Resolución* recurrida,[1] la cual se confirma. En cuanto a la *Minuta Resolución* recurrida, corresponde evaluar el recurso como un *certiorari*, cuya expedición se deniega. Veamos.

---

[1] Véase, *Cortés Pagán v. González Colón*, 184 DPR 807 (2012); *Figueroa v. Del Rosario*, 147 DPR 121 (1998).

Asimismo, por razones de economía procesal, conservamos su actual codificación alfanumérica.

## I

El origen de este caso se remonta a la *Petición y Estipulación* instada el 9 de febrero de 2021 por el recurrido, Ángel Morales Frías (Morales Frías) y la peticionaria, Kiana Cristal Castillo Mayor (Castillo Mayor), en la que ambos comparecieron de manera *ex parte* a solicitarle al foro primario que declarase "roto y disuelto el vínculo matrimonial existente" entre ambos, por la causal de consentimiento mutuo.[2] Tras la presentación de la petición, el 14 de abril de 2021, el foro primario llevó a cabo una vista en su fondo, mediante el mecanismo de videoconferencia. Así, el 15 de abril de 2021, el foro *a quo* dictó una *Sentencia* de divorcio, notificada el 20 de abril de 2021, en la cual acogió las estipulaciones presentadas por Morales Frías y Castillo Mayor, y declaró Ha Lugar la petición de divorcio, por la causal de consentimiento mutuo.[3]

Entre los acuerdos suscritos, se destaca el hecho de que la patria potestad de las dos menores procreadas durante el matrimonio sería compartida. Respecto al acuerdo de custodia, acordaron que esta sería compartida a tiempo igual entre ambos; entiéndase, que las menores pasarían una semana con cada progenitor.

En cuanto a la pensión alimentaria, estipularon que Morales Frías aportaría $752.00 mensuales, correspondientes al pago de la hipoteca del inmueble en el que reside Castillo Mayor con las menores. Las partes también acordaron que el referido inmueble permanecería como hogar seguro, en beneficio de las menores, hasta que la más joven advenga a la mayoridad. Asimismo, acordaron que Morales Frías pagaría el plan médico de las menores hasta tanto cumplan la mayoría de edad. También acordaron que la peticionaria retendría un vehículo Hyundai, modelo Tucson, del 2020, el cual

---

[2] Entrada Núm. 1 del caso núm. BY2021RF00219 del SUMAC.
[3] Entrada Núm. 11 del caso núm. BY2021RF00219 del SUMAC.

tenía deuda por concepto de préstamo con PenFed. En la *Sentencia* también quedó consignado que Castillo Mayor asumiría la deuda, que en ese momento ascendía a $21,004.00.

Respecto a los gastos educativos de las menores, estipularon que cada uno asumiría el 50% del pago de matrícula del colegio donde cursan estudios, así como las mensualidades, el costo de los libros, los uniformes y demás materiales. Sobre la vigencia de estos acuerdos relacionados con el pago de la pensión alimentaria, el foro *a quo* dispuso en la *Sentencia* que esta "regirá entre las partes hasta que este tribunal haga una nueva determinación".

Transcurridos cuatro años, el 2 de abril de 2025, Morales Frías presentó una *Moción en Solicitud de Orden.*[4] Mediante esta, solicitó que el foro primario le ordene a Castillo Mayor realizar las gestiones necesarias para relevarle como codeudor del préstamo de auto correspondiente al vehículo que esta retiene. Ese mismo día, Morales Frías presentó otra petición ante el foro primario, en la que solicitó una revisión de pensión alimentaria, así como el cese del hogar seguro.[5]

En atención a lo anterior, el 2 de abril de 2025, el foro primario emitió dos dictámenes titulados *Resolución Interlocutoria,* que fueron notificados al día siguiente.[6] En virtud de estos, le concedió diez (10) días a la peticionaria para acreditar las gestiones realizadas con PenFed para liberar al recurrido como codeudor en el referido préstamo, así como para replicar a la solicitud de cese de hogar seguro. Luego de incumplir dichas órdenes y, tras ser apercibida so pena de sanciones de que se le concedía un último plazo de tres (3) días,[7] la peticionaria compareció y se opuso a la solicitud de cese de hogar seguro.[8]

---

[4] Entrada Núm. 14 del caso núm. BY2021RF00219 del SUMAC.
[5] Entrada Núm. 13 del caso núm. BY2021RF00219 del SUMAC.
[6] Entradas Núm. 16 y 17 del caso núm. BY2021RF00219 del SUMAC.
[7] Entrada Núm. 29 del caso núm. BY2021RF00219 del SUMAC.
[8] Entrada Núm. 31 del caso núm. BY2021RF00219 del SUMAC.

Posteriormente, como resultado de un referido por parte del foro primario, el 8 de abril de 2025, una Examinadora de Pensiones Alimentarias (EPA) señaló una vista de alimentos, que se llevaría a cabo el 28 de abril de 2025, mediante el mecanismo de videoconferencia.[9] A solicitud del recurrido, la vista fue recalendarizada para el 7 de mayo de 2025.[10]

En cuanto a la solicitud de cese de hogar seguro, el foro primario emitió y notificó una *Resolución Interlocutoria* el 24 de abril de 2025.[11] Mediante esta, reiteró la validez de la estipulación consignada en la *Sentencia*, a los efectos de que las partes se obligaron a que el inmueble donde reside la peticionaria permanezca como hogar seguro de las menores hasta el 13 de noviembre de 2034, fecha en que la mas joven de estas adviene a la mayoridad.

Insatisfecho, el 7 de mayo de 2025, Morales Frías presentó una *Moción de Reconsideración*,[12] que más tarde fue declarada No Ha Lugar por el foro primario.[13] Cabe destacar que, ese mismo día, se llevó a cabo la vista de alimentos que estaba pautada ante una EPA.

Tras celebrar la vista, la EPA rindió un informe, cuyas recomendaciones fueron acogidas por el foro primario en una *Resolución Provisional de Alimentos* emitida y notificada el 12 de junio de 2025.[14] En síntesis, el foro *a quo* dispuso que, en virtud del acuerdo de custodia compartida respecto a las dos menores, cada progenitor debía asumir el 100% de los gastos relacionados a las necesidades básicas de ambas, durante los periodos que las menores estén con cada uno. En cuanto a los gastos escolares, dispuso que deben cubrirlos a razón del 50% cada uno.

---

[9] Entrada Núm. 18 del caso núm. BY2021RF00219 del SUMAC.
[10] Entrada Núm. 22 del caso núm. BY2021RF00219 del SUMAC.
[11] Entrada Núm. 31 del caso núm. BY2021RF00219 del SUMAC.
[12] Entrada Núm. 34 del caso núm. BY2021RF00219 del SUMAC.
[13] Véase *Resolución Interlocutoria* emitida y notificada el 7 de julio de 2025, en la entrada núm. 47 del caso núm. BY2021RF00219 del SUMAC.
[14] Entrada Núm. 41 del caso núm. BY2021RF00219 del SUMAC.

El 7 de agosto de 2025, Morales Frías presentó una *Moción Informativa y en Solicitud de Orden* en la que solicitó la imposición de sanciones a Castillo Mayor, debido a su incumplimiento con tramitar que PenFed le libere como codeudor en el préstamo de auto antes mencionado.[15] Ese mismo día, el foro *a quo* le impuso $500.00 de sanción a la peticionaria por el incumplimiento con dicha orden y le concedió a esta un término de cinco (5) días para acreditar que llevó a cabo gestiones conducentes a cumplir con la orden.

El 8 de agosto de 2025, el recurrido presentó una *Solicitud de Orden*.[16] Mediante esta, reclamó del foro primario que atempere la pensión de alimentos a los efectos de excluir el gasto de vivienda del cálculo de la pensión alimentaria suplementaria, de conformidad con el Artículo 19(2)(a) del Reglamento Núm. 9535 de 15 de febrero de 2024.[17]

El 12 de agosto de 2025, la peticionaria presentó una *Moción de Reconsideración a las Sanciones*,[18] a la cual el recurrido se opuso oportunamente, de conformidad con una orden del foro primario.[19] Tras evaluar la postura de las partes, el foro *a quo* declaró No Ha Lugar la reconsideración.[20] Así, debido a que la peticionaria volvió a incumplir, el 5 de septiembre de 2025, el foro primario le impuso a la peticionaria una sanción adicional de $50.00.

En cuanto a la *Solicitud de Orden* que presentó el recurrido el 8 de agosto de 2025, la EPA llevó a cabo una vista el 5 de septiembre de 2025 y rindió un informe que fue acogido por el foro primario mediante una *Resolución* emitida y notificada el 8 de septiembre de 2025.[21] Mediante esta, el foro *a quo* resolvió que, en virtud de lo

[15] Entrada Núm. 50 del caso núm. BY2021RF00219 del SUMAC.
[16] Entrada Núm. 52 del caso núm. BY2021RF00219 del SUMAC.
[17] A este reglamento se le conoce como las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico.*
[18] Entrada Núm. 54 del caso núm. BY2021RF00219 del SUMAC.
[19] Entrada Núm. 56 del caso núm. BY2021RF00219 del SUMAC.
[20] Entrada Núm. 57 del caso núm. BY2021RF00219 del SUMAC.
[21] Entrada Núm. 60 del caso núm. BY2021RF00219 del SUMAC.

dispuesto en el Artículo 19(2)(a) del Reglamento Núm. 9535, procedía relevar a Morales Frías del pago de la hipoteca del inmueble donde la peticionaria reside junto a los menores.

Insatisfecha con el referido dictamen, el 11 de septiembre de 2025, la peticionaria solicitó reconsideración.[22] Evaluada esta solicitud, el foro primario la declaró No Ha Lugar mediante una *Resolución* emitida y notificada el 22 de septiembre de 2025.[23]

Así también, es importante reseñar que el 17 de septiembre de 2025, el foro primario llevó a cabo una vista de desacato, en la que se discutieron las gestiones realizadas por Castillo Mayor -hasta el momento, infructuosas- para liberar a Morales Frías como codeudor del préstamo de auto con PenFed. En esa ocasión, el foro primario dispuso dejar sin efecto la sanción adicional previamente impuesta a la peticionaria, ya que esta evidenció el pago de la sanción original de $500.00.

Así también, durante la vista, el foro primario expresó que, como parte del trámite de ejecución de la *Sentencia* en este caso, le concedía a la peticionaria un término final de sesenta (60) días para llevar a cabo gestiones conducentes a liberar al recurrido del préstamo de auto con PenFed. Insatisfecha, la peticionaria solicitó reconsideración en sala, por conducto de su representante legal, pero esta fue declarada No Ha Lugar. El foro primario consignó este dictamen en la *Minuta-Resolución* correspondiente a la vista de desacato del 17 de septiembre de 2025, la cual fue notificada a las partes el 22 de septiembre de 2025.

En lo pertinente, cabe reseñar que, el 24 de septiembre de 2025, Morales Frías presentó una *Solicitud de Orden.*[24] En virtud de esta, reiteró que le solicita al foro primario que le ordene a la

---

[22] Entrada Núm. 64 del caso núm. BY2021RF00219 del SUMAC.
[23] Entrada Núm. 78 del caso núm. BY2021RF00219 del SUMAC.
[24] Entrada Núm. 82 del caso núm. BY2021RF00219 del SUMAC.

peticionaria hacer las gestiones correspondientes a liberarle como codeudor del préstamo de auto con PenFed. En respuesta, el foro *a quo* emitió una *Resolución Interlocutoria* en la que refirió al recurrido a lo dispuesto en la *Minuta-Resolución* notificada el 22 de septiembre de 2025.[25]

Por encontrarse en desacuerdo, tanto con la *Minuta-Resolución* como con la *Resolución*, ambas notificadas el 22 de septiembre de 2025, la peticionaria acude ante este Foro mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> Incidió en error del derecho el Tribunal de Primera Instancia, al no darle interpretación a las cláusulas del convenio suscritas entre las partes, y las cláusulas debieron ser interpretadas las unas con las otras las cuales, como moldura que propicio el finalizar la posibilidad de un pleito.

> Incidió en error de derecho el Tribunal de Primera Instancia, al relevar del pago de la hipoteca al Recurrido, Sr. Ángel Morales Frías, siendo un hecho que el mismo se obligó desde el mismo momento en que se suscribieron los acuerdos del divorcio, y conocía que las menores compartirían semanas alternas con la Peticionaria, Sra. Castillo Mayor, por lo que este se obligaba a continuar satisfaciendo los pagos mensuales de la hipoteca del hogar donde viven las niñas, hasta que la niña menor cumpla los 21 años.

> Incidió en error de derecho el Tribunal de Primera Instancia, al darle una interpretación contraria a la norma de ejecución de sentencia en casos de divorcio por mutuo consentimiento, al imponer un desacato para obligar el cumplimiento de unas acciones que fueron parte de la estipulación suscrita por las partes al momento de la redacción del convenio del divorcio.

> Incidió en error el Tribunal de Primera Instancia, en la interpretación incorrecta del derecho para asumir jurisdicción sobre una materia no contenida en una sentencia final y firme de divorcio por mutuo consentimiento, haciendo asequible la sanción del desacato de una orden judicial para compeler a una parte que proceda al pago de una deuda de un préstamo de auto, con el objeto de liberar al codeudor.

> Incidió en error el Tribunal de Primera Instancia, en la interpretación incorrecta del derecho introduciendo la figura de la novación a un convenio de divorcio, cuando las partes no estipularon dicha sustitución de deudor ante el acreedor.

---

[25] Entrada Núm. 83 del caso núm. BY2021RF00219 del SUMAC.

Incidió en error el Tribunal de Primera Instancia, al utilizar la sanción del desacato de una orden judicial para compeler a una parte que proceda al pago de una deuda de un préstamo de auto, con el objeto de liberar al codeudor y contrario a la prohibición contra el encarcelamiento por deudas en Puerto Rico; el Artículo II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico.

Evaluado lo anterior, le ordenamos al recurrido mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar los dictámenes impugnados. En cumplimiento con nuestra orden, el 30 de octubre de 2025, la parte recurrida presentó un *Memorando en oposición a expedición de auto de certiorari al amparo de la Regla 37 del Tribunal de Apelaciones*. Esencialmente, sostuvo que procede denegar el auto discrecional solicitado.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A

Sabido es que la obligación de los padres y madres de alimentar a sus hijos e hijas menores de edad es parte al derecho a la vida consagrado en la Sección 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo I. *Ríos Figueroa v. López Maisonet,* res. 25 de agosto de 2025, 2025 TSPR 86. Por tal razón, los casos de alimentos de menores están revestidos del más alto interés público, siendo el interés principal el bienestar de estos. *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Díaz Ramos v. Matta Irizarry,* 198 DPR 916, 927 (2017); *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016). Esta obligación emana de la relación filial y se origina desde el momento en que la paternidad o maternidad queda legalmente establecida. *Íd.*; *Fonseca Zayas v. Rodríguez Meléndez,* 180 DPR 623, 632-633 (2011). En nuestro ordenamiento jurídico, se entiende por alimentos, todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la

recreación y la asistencia médica de una persona, según la posición social de su familia. Art. 653 del Código Civil, 31 LPRA sec. 7531.

Conforme a lo anterior, la Asamblea Legislativa ha legislado para procurar que los padres, madres o personas legalmente responsables contribuyan a la manutención y bienestar de sus hijos, hijas o dependientes. Ello, mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación, así como la distribución de las pensiones alimentarias. *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 712 (2014); 8 LPRA sec. 502. A tales fines, la Exposición de Motivos de la *Ley Orgánica de la Administración para el Sustento de Menores*, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 *et seq.*, promueve como política pública del Estado Libre Asociado de Puerto Rico que, los padres, madres o personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos e hijas.

Así, una vez fijada una pensión alimentaria, siempre estará sujeta a revisión y puede modificarse ante un cambio sustancial en las circunstancias personales del alimentante o del alimentista. Así, pues, salvo circunstancias extraordinarias, tal revisión podrá darse en un plazo de tres (3) años, desde la última fijación. Art. 19(c) de la Ley Núm. 5, 8 LPRA sec. 518(c); *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998).

**B**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). En lo sustantivo, se le considera un recurso extraordinario, mediante el cual un foro revisor está facultado para

enmendar los errores que cometió el foro revisado, cuando "el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley". Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491.

En cuanto al aspecto procesal de este recurso extraordinario, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 codifica la revisión de los dictámenes interlocutorios del Tribunal de Primera Instancia. Sin embargo, y a pesar de que la citada regla no lo contempla, el Tribunal Supremo ha expresado que el *certiorari* también es el vehículo procesal adecuado para solicitar la revisión de resoluciones y órdenes post sentencia. Véase, *Banco Popular de Puerto Rico v. Gómez Alayón*, 213 DPR 314, 336-337 (2023); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012).

En cualquiera de estos escenarios, es aplicable la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, en la medida que esta dispone los criterios que el foro revisor debe considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y tampoco constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). El Tribunal Supremo también ha expresado que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

### III

Tal y como adelantáramos, a pesar de que la peticionaria presentó el caso de epígrafe como un recurso de *certiorari*, nos encontramos ante un recurso híbrido. Ello, toda vez que corresponde acogerlo como una apelación, únicamente para fines de la revisión de la *Resolución* emitida y notificada el 22 de septiembre

de 2025,[26] mientras que procede considerarlo como un *certiorari*, en el caso de la revisión de la *Minuta Resolución* correspondiente a la vista del 17 de septiembre de 2025, la cual también se notificó a las partes el 22 de septiembre de 2025.

**A**

En primer lugar, y por estar estrechamente relacionados, discutiremos de manera conjunta los primeros dos señalamientos de error, los cuales fueron formulados por la peticionaria para fines de impugnar la *Resolución* recurrida. Veamos.

Mediante estos, Castillo Mayor adujo esencialmente que el foro *a quo* incidió al no honrar el acuerdo suscrito por las partes en virtud de las estipulaciones que dicho foro acogió en la *Sentencia* de divorcio. Esto, a los fines de que acordaron que el recurrido asumiría -en calidad de pensión alimentaria- el pago del préstamo hipotecario correspondiente al inmueble donde la peticionaria reside con las menores, a pesar de que también pactaron mantener un acuerdo de custodia compartida al 50%. En síntesis, es la postura de la peticionaria que el foro primario no interpretó adecuadamente las cláusulas del convenio suscrito entre las partes. No tiene razón.

Comenzamos por enfatizar que a las estipulaciones que puedan suscribir las partes como parte de un proceso de divorcio, relacionadas con la pensión alimentaria -en este caso, de dos menores- no puede impartírseles carácter permanente. Como bien reseñáramos en nuestra exposición del derecho aplicable, una vez se fija una pensión alimentaria, siempre estará sujeta a revisión, por lo que puede modificarse, si surge un cambio sustancial en las

---

[26] Mediante este dictamen, el foro primario modificó el acuerdo de pensión alimentaria estipulado en virtud de la *Sentencia* emitida en este caso el 15 de abril de 2021, la cual fue notificada a las partes el 20 de abril de 2021. Por vía jurisprudencial, nuestro Tribunal Supremo ha resuelto que las determinaciones sobre pensiones alimentarias, ya sea de menores o de excónyuges, constituyen propiamente sentencias de las cuales corresponde interponer un recurso de apelación. Véase, *Cortés Pagán v. González Colón*, 184 DPR 807 (2012); *Figueroa v. Del Rosario*, 147 DPR 121 (1998).

circunstancias personales del alimentante o del alimentista que lo justifique. Así también, nuestro ordenamiento jurídico contempla que, aún si no concurren circunstancias extraordinarias, las pensiones alimentarias también pueden revisarse en un plazo de tres (3) años, desde la última fijación.[27]

En el presente caso, la peticionaria y el recurrido se divorciaron por la causal de consentimiento mutuo el 15 de abril de 2021 y la *Sentencia* de divorcio les fue notificada el 20 de abril de 2021, por lo que advino final y firme desde el 20 de mayo de 2021. Sin embargo, no fue hasta el 2 de abril de 2025 que Morales Frías solicitó la revisión de la pensión alimentaria, fundamentada precisamente en que "hace más de tres (3) años que se estableció pensión alimentaria en beneficio de los menores habidos entre las partes".[28] Consecuentemente, es forzoso concluir que, en el momento en que el recurrido solicitó la revisión de la pensión alimentaria, esta era revisable, pues ya habían transcurrido casi cuatro (4) años desde que la *Sentencia* de divorcio advino final y firme.

Asimismo, determinamos que procede confirmar la *Resolución* recurrida, toda vez que también es correcta en derecho. Ello, pues, mediante esta, el foro *a quo* determinó que procedía relevar a Morales Frías del pago de la hipoteca correspondiente al inmueble donde Castillo Mayor reside con las dos menores, el cual asciende a $752.00. Como fundamento para este dictamen, el foro primario destacó que las partes ostentan la custodia compartida de las dos menores, a razón del 50%, por lo que es aplicable lo dispuesto en el Artículo 19(2)(a) del Reglamento Núm. 9535. Actuó correctamente el foro primario.

---

[27] Véase, Art. 19(c) de la Ley de ASUME, 8 LPRA sec. 518(c); *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998).
[28] Entrada Núm. 13 del caso núm. BY2021RF00219 del SUMAC.

En lo pertinente, el Artículo 19(2)(a) del Reglamento Núm. 9535 dispone que "[p]ara el cálculo de la pensión alimentaria suplementaria en una custodia compartida al 50%, tanto la persona custodia como la persona no custodia se consideran personas custodias". Asimismo, se dispone que, en estos casos, corresponde exceptuar el gasto de vivienda del cálculo de la pensión alimentaria suplementaria. En el caso de la peticionaria y el recurrido, estos actualmente se rigen por un acuerdo de sufragar el 100% de las necesidades básicas de las menores durante la semana que permanecen bajo la custodia de cada progenitor, mientras que dividen el resto de los gastos a razón del 50%.

Así, de conformidad con esta disposición, el foro primario determinó correctamente que procedía relevar al recurrido del pago de la mencionada hipoteca. Consecuentemente, no se cometieron los primeros dos señalamientos formulados en el recurso de epígrafe, por lo que procede confirmar la *Resolución* recurrida.

**B**

Mediante la *Minuta-Resolución* recurrida, Castillo Mayor cuestiona el proceder del foro primario a los efectos de concederle un término de sesenta (60) días para acreditar, como parte de la etapa de ejecución de la *Sentencia* de divorcio, que realizó las gestiones conducentes a liberar a Morales Frías como codeudor del préstamo de auto con PenFed. Por tratarse de un dictamen post sentencia, este dictamen es susceptible de revisión mediante un recurso de *certiorari*.

Sin embargo, luego de evaluar los señalamientos de error tercero, cuarto, quinto y sexto, planteados en el recurso ante nos, a la luz de los criterios de nuestra Regla 40, *supra*, consideramos que no existe criterio jurídico que justifique nuestra intervención para revocar la *Minuta-Resolución* recurrida. De este modo, somos del criterio que, mediante lo argumentado en el recurso de epígrafe, la

peticionaria no justificó que este foro ejerciera su discreción para variar el proceder impugnado. Consecuentemente, procede denegar el auto discrecional solicitado.

**IV**

Por los fundamentos que anteceden, se acoge el presente recurso como una apelación, para fines de la revisión de la *Resolución* recurrida, mientras que se acoge como un *certiorari,* para efectos de la revisión de la *Minuta-Resolución* recurrida, el cual se deniega*.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones