Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| HÉCTOR F. MARTÍNEZ GONZÁLEZ<br><br>Apelante<br><br>v.<br><br>CLAUDIA N. VISCONTI SMITH<br><br>Apelada | KLCE202300706 | *Certiorari* acogida como apelación<br>Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>D DI2018-1519<br><br>Sobre:<br>Divorcio |

Panel integrado por su presidente el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Mateu Meléndez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de septiembre de 2023.

El 23 de junio del presente año, el Sr. Héctor F. Martínez González (en adelante, señor Martínez) compareció ante este Tribunal de Apelaciones mediante recurso de *Certiorari*[1] en el que nos solicita la revocación de la *Resolución y Orden* emitida el 19 de mayo de 2023, y notificada el día 24, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario). De igual manera, nos solicita la revisión judicial de una *Orden* emitida por el foro primario con fecha del 9 de junio de 2023, notificada el día 13.

Mediante el primero de estos dictámenes, se fijó como su obligación alimentaria la cantidad de $2,297.78 mensuales y a cubrir el 69.93% de los gastos médicos no cubiertos por el plan médico privado que este provee.

---

[1] La determinación que emita el foro de instancia para resolver una solicitud de modificación de un decreto de custodia o alimentos, por cambios en las circunstancias, adjudica una reclamación entre las partes, de acuerdo con los hechos y las circunstancias existentes *en el momento* en que se dilucida y resuelve ésta y, por ende, constituye una nueva sentencia de la cual puede apelarse. Figueroa v. Del Rosario, 147 DPR 121, 129 (1998), reiterado en Cortés Pagán v. González Colón, 184 DPR 807 (2012). Y así surge de la *Resolución y Orden* recurrida, véase, apéndice XXXV pág. 68. Siendo ello así, el recurso instado por el señor Martínez debió ser sometido como una apelación y no un *certiorari.* En virtud de ello, acogemos este como una apelación, aunque conserve su identificación alfanumérica

En el segundo, el foro primario se dio por informado sobre la postura del Examinador de Pensiones Alimentarias (EPA) en cuanto a la exclusión de ciertos documentos como evidencia de impugnación.

Examinado el expediente, y leída la transcripción de la regrabación de la vista de rebaja de pensión alimentaria, **CONFIRMAMOS** la determinación apelada.

I

La controversia traída a nuestra atención comenzó con la presentación de una solicitud de revisión de pensión alimentaria sometida por el señor Martínez el 15 de julio de 2021. Atendido el escrito, el TPI remitió el asunto ante la consideración del Examinador de Pensiones Alimentarias (en adelante, EPA). El 5 de noviembre de 2021, habiéndose celebrado la correspondiente audiencia, se emitió *Orden de pensión alimenticia provisional* en la que se estableció una pensión de $2,410.35 mensuales en beneficio de sus dos hijos menores de edad, FAMV y EIMV. Según el documento, esta obligación consistía en un pago directo de las mensualidades de colegio y matrícula que promedia $796.03 mensuales, así como un depósito de $807.16 quincenales. Se estableció, además, que el señor Martínez pagara el 74.72% de los gastos médicos no cubiertos por el plan médico, así como los del regreso a la escuela, mediante reembolso a ser pagado en un término de 15 días, una vez evidenciado el gasto.

Durante el trámite procesal de la modificación de pensión, debido al incumplimiento por parte de la recurrida del descubrimiento de prueba, ciertas órdenes y del impago de sanciones puestas, a solicitud de parte, a esta se le eliminaron las alegaciones. La vista de pensión alimentaria final fue celebrada el 20 de abril de este año. Varios días después, el señor Martínez sometió una *Solicitud de orden al EPA* en la que le informó al tribunal que durante la vista ante el EPA la señora Visconti aceptó que de los estados bancarios que proveyó como parte del descubrimiento de

prueba surgían créditos que podían ser ingresos y que, además de su madre, ella recibió pagos por clases de natación. Asimismo, señaló que el EPA no permitió la utilización de dichos estados bancarios como prueba de refutación por no haber sido notificada previo a la audiencia. Argumentó que, debido a que los estados bancarios no admitidos fueron provistos por la recurrida y fueron ofrecidos como prueba de refutación, debía ordenársele al EPA a considerarlos para efectuar el cálculo de la pensión.

Mediante *Orden* del 4 de mayo de 2023, notificada el día 9, el foro primario le concedió al EPA y a la recurrida 10 días para expresarse en cuanto al escrito del señor Martínez. Vencido el plazo, nadie compareció, por lo que el señor Martínez instó una *Moción informativa* en la que así lo señala. Así las cosas, el 19 de mayo de 2023, el EPA emitió el correspondiente informe, en el que consignó las siguientes determinaciones de hechos:

1. Las partes son padres de los menores FAMV, nacido el 22 de marzo de 2010 y EIMV, nacido el 13 de abril de 2012, de 13 y 11 años de edad, respectivamente.

2. Los menores residen bajo la custodia de la madre en Guaynabo, Puerto Rico.

3. Las partes se divorciaron el 18 de enero de 2019. Acordaron provisionalmente que el padre continuaría cubriendo todos los gastos del hogar en lo que alcanzaban un acuerdo de pensión final. (Véase, Sentencia de Divorcio del 18 de enero de 2019)

4. **El 8 de marzo de 2019 las partes sometieron una estipulación de pensión en beneficio de sus dos hijos, en la que el padre se comprometió a satisfacer un pago directo a la madre de $1,300.00 al mes. Además, acordó pagar $1,500.00 para satisfacer el gasto de renta, así como asumir los gastos de educación de los menores y el pago de las utilizadas del hogar. (Véase, Escrito de Estipulación presentado el 8 de marzo de 2019 y Resolución del 12 de marzo de 2019).**

5. La estipulación de alimentos fue enmendada posteriormente para que las utilidades del hogar fueran satisfechas por la madre custodia a partir del 31 de diciembre de 2019. (Véase, Moción Conjunta Informando Enmiendas a Estipulación, presentada el 10 de enero de 2020 y Resolución del 23 de junio de 2020)

6. El 15 de julio de 2021 el Sr. Héctor F. Martínez González, presentó solicitud de revisión de la pensión alimenticia existente alegando pérdida de ingresos no atribuibles a su persona. Durante el pleito de revisión, el alimentante solicitó la eliminación de las alegaciones de la madre como sanción por su reiterado incumplimiento con las

órdenes del Tribunal. Mediante Orden del 19 de octubre de 2022, el Tribunal accedió a la solicitud y dispuso la eliminación de las alegaciones de la madre promovida.[2]

7. El promovente trabaja como mecánico para la Guardia Costanera de los Estados Unidos. Conforme su Planilla de Información Personal y Económica sometida el 25 de octubre [de] 2021, devenga un ingreso bruto de $7,171.15 al mes, equivalente a un ingreso neto de $4,581.53 mensuales, luego de las deducciones dispuestas por ley y aquellas aceptables por las Guías. También recibe ingresos adicionales por concepto del pago de renta por $374.00 al mes, que corresponde al 50% de su participación en el canon de arrendamiento de $748.00 netos mensuales de un inmueble ganancial. El ingreso neto mensual con que cuenta el promovente asciende a $4,955.53 mensuales.

8. **Le reconocemos a la madre promovida la capacidad de generar un ingreso neto de por lo menos $2,131.33 al mes, equivalente al estilo de vida que refleja la suma de sus gastos mensuales por $4,931.33, según declarados en su Planilla de Información Personal y Económica, juramentada el 27 de septiembre de 2021, menos el pago de pensión alimenticia que recibe del padre alimentante equivalente a $2,800.00 mensuales, más el pago de gastos educativos, conforme fue estipulada y acogida por el Tribunal mediante Resolución del 12 de marzo de 2019 y, posteriormente modificada, en virtud de Resolución del 23 de junio de 2020.**

9. **Los menores residen con su madre en una vivienda que tiene un canon de arrendamiento de $1,500.00 al mes. En la residencia viven tres personas. El gasto de vivienda que corresponde a los menores alimentistas es de $1,000.00 mensuales.**

10. Los menores reciben educación en una institución educativa privada. Las mensualidades de colegio y matrícula promedian $796.03 a doce meses.

---

[2] Como escolio 1 de su informe, el EPA expuso:

"Como resultado de la eliminación de las alegaciones a la parte promovida, la abogada del alimentante, Lcda. Chantal Delgado, sostuvo en la vista de revisión de pensión celebrada el 20 de abril de 2023, que la sanción impuesta a la madre tenía el efecto de que la revisión de la obligación alimenticia se limitara al cómputo de una pensión básica y que el examinador no debía considerar los gastos suplementarios reclamados por la dama en beneficio de los menores. [Específicamente], adujo que el gasto de vivienda no debía ser incluido en el cómputo de pensión porque, independientemente de su existencia, no se había actualizado la evidencia del pago de esa partida.

No podemos acoger el planteamiento esbozado por el padre alimentante. Las sanciones impuestas a la madre o su abogado por sus incumplimientos durante la tramitación del litigio[], no pueden traducirse a un menoscabo al derecho fundamental de los menores a recibir un sustento razonable y adecuado para atender sus necesidades básicas como suplementarias. En el presente caso los gastos suplementarios de vivienda y educación de los menores siempre han sido reconocidos por ambos progenitores desde la estipulación inicial sometida como parte del divorcio. Conforme a ese acuerdo, el padre alimentante aceptó, entre otras cosas, satisfacer el pago total del arrendamiento de la vivienda que constituyó el techo de la pareja y asumir los gastos educativos de sus dos hijos. Es preciso destacar que durante la vista de alimentos del 20 de abril de 2023, no surgieron cuestionamientos de que la vivienda fuese distinta o el monto del arrendamiento variado con relación a la residencia donde han vivido los menores desde antes del divorcio de sus padres. Más aún, tómese en cuenta que el fundamento en que se basa la solicitud de revisión de pensión del padre lo es su alegación de que sus ingresos han mermado significativamente y no plantea que ha ocurrido un cambio sustancial en los gastos de los menores."

11. Los menores se benefician del plan médico privado provisto por el padre alimentante.

12. El ingreso neto combinado de ambos progenitores es de $7,086.86 al mes.

13. De acuerdo con el ingreso neto mensual combinado, el padre no custodio tiene una responsabilidad proporcional de 69.93% y la madre custodia de 30.07% en aportar a los gastos mensuales de los menores alimentistas para cubrir sus necesidades básicas y suplementarias.

14. A tenor con la proporción antes establecida, y de acuerdo con las Guías para computar las pensiones alimenticias en Puerto Rico, al padre alimentante le corresponde pagar la suma de $1,041.89 mensuales por concepto de pensión alimenticia básica. Igualmente, deberá satisfacer la cantidad de $1,255.89 adicionales al mes para satisfacer su responsabilidad proporcional en los gastos suplementarios de vivienda, mensualidades de colegio y matrícula.

15. La pensión alimenticia total que viene obligado a satisfacer el padre en beneficio de sus dos hijos menores de edad es de $2,297.78 mensuales, de los cuales retendrá la cantidad de $796.03 al mes para el pago directo de las mensualidades de colegio y matrícula, y el remanente de $1,501.75 mensuales serán depositados en plazos de $750.87 quincenales en la cuenta #241765452 del Banco Popular de PR perteneciente a la señora Visconti Smith. Igualmente, deberá reembolsarle a la madre custodia el 69.93% de los gastos médicos no cubiertos por el plan, así como los de regreso a la escuela, dentro de los siguientes 15 días de haber recibido la evidencia del gasto.

16. El pago reducido de la pensión alimenticia revisada deberá ser efectivo al 1ro de mayo de 2023.

(Énfasis suplido)

Tras consignarlas y exponer el derecho aplicable, el EPA manifestó que, de la prueba presentada, el estilo de vida que refleja la prueba examinada y creída por él es sustancialmente distinta a la capacidad económica que la madre alega tener. Por ello y cónsono con la interpretación abarcadora del concepto "ingreso", entendió que la pensión recomendada era proporcional y reflejaba tanto las necesidades del menor como la capacidad económica del padre y la madre para satisfacerlas. Así, a tenor con las determinaciones de hechos alcanzada, recomendó al Tribunal que:

1. Fijara al señor Martínez una pensión alimenticia revisada de **$2,297.78** mensuales de los cuales retendría la cantidad de $796.03 al mes para el pago directo de las mensualidades de colegio y matrícula, y el remanente de **$1,501.75** mensuales serían depositados en plazos de **$750.87** quincenales en la cuenta

#241765452 del Banco Popular de Puerto Rico perteneciente a la señora Visconti Smith.

2.  Estableciera que el pago de la pensión alimenticia revisada será efectivo el 1ro de mayo de 2023.

3.  Instruyera que los menores continuarán beneficiándose del plan médico privado provisto por el padre alimentante.

4.  Ordenara al señor Martínez González a reembolsarle a la señora Visconti Smith el **69.93%** de los gastos médicos no cubiertos por el plan, así como los de regreso a la escuela, dentro de los siguientes 15 días de haber recibido la evidencia del gasto.

5.  Instruyera al señor Martínez González de su responsabilidad de informar al Tribunal de cualquier cambio de patrono o salario que tenga, así como también del acceso que tenga a cualquier cubierta de plan médico a un costo razonable.

6.  Haga cualquier otro pronunciamiento que en derecho proceda. (Énfasis suplido)

En esa misma fecha, el TPI dictó *Resolución y Orden* en la que acogió las recomendaciones emitidas por el EPA. Ahora bien, el 5 de junio de 2023, el TPI le ordenó a la recurrida a que, en un término final de 10 días, cumpliera con varias órdenes emitidas, so pena de severas sanciones y la imposición de honorarios de abogado. Asimismo, determinó que en el mismo término el EPA cumpliera la *Orden* del 4 de mayo y se expresara en cuanto a la *Solicitud de orden al EPA* sometida por el señor Martínez. El 8 de junio del año en curso, sometió un *Acta*. En esta, y en cumplimiento con lo ordenado, expuso como a continuación se transcribe:

Destacamos que la posición de este oficial examinador referente a la determinación en controversia ya se encuentra consignada en el Informe del Examinador de Pensiones Alimenticias, rendido el 19 de mayo de 2023, a la página 3, nota al calce número 3, que obra en el expediente.

Ante este escrito, mediante *Orden* del 13 de junio de 2023, el foro primario dio por cumplida las órdenes al EPA. Inconforme con la *Resolución y Orden* en la que se acogieron las recomendaciones del EPA, así como con la decisión de dar por cumplidas sus órdenes, el señor Martínez instó el recurso de epígrafe, en el que en sus señalamientos de error alegó que el TPI se equivocó al:

[…] acoger la recomendación del EPA de no aceptar estados bancarios enviados por la propia recurrida para propósitos de impugnación de testimonio sobre ingresos declarados por ésta.

[…] acoger la recomendación del EPA de tomar en consideración el gasto de vivienda sin que la parte sometiera prueba alguna del pago por tal concepto, en contravención de la propia instrucción del EPA.

Atendido el recurso, así como la *Moción al amparo de la Regla 76 del Reglamento del Tribunal de Apelaciones del 20 de julio de 2004, 162 DPR 444 (2004), T.4 Ap. XXII-B, R. 76* que también sometiera el señor Martínez, el 27 de junio de este año emitimos *Resolución* en la que establecimos los términos para la presentación de la transcripción estipulada, el alegato suplementario, así como la posición de la recurrida. El 21 de julio de 2023, el señor Martínez sometió la transcripción de la vista.

Los términos establecidos en nuestra *Resolución* del 27 de junio han vencido y el señor Martínez no ha sometido alegato suplementario. La recurrida, tampoco ha comparecido a someter su posición en cuanto al recurso. Siendo ello así, damos por sometido el asunto sin el beneficio del alegato suplementario, ni la comparecencia de la recurrida y procedemos a resolver.

-II-

-A-

El deber de alimentar

La obligación de satisfacer las pensiones alimentarias a favor de menores de edad en nuestro ordenamiento jurídico está revestida del más alto interés público. Díaz Ramos v. Matta Irizarry, 198 DPR 916 (2017); Rodríguez Rivera v. De León Otaño, 191 DPR 700, 703 (2014). Los tribunales tienen el deber de velar por ese derecho y asegurar el cumplimiento con las obligaciones que derivan del deber de los progenitores de alimentar a sus hijos menores de edad, toda vez que un reclamo de alimentos se fundamenta en el derecho a la vida consagrado en la Sección 7 del Artículo II de nuestra Constitución. Const. ELA Art. II, Sec. 7., Const. P.R., LPRA,

Tomo 1; <u>Díaz Ramos v. Matta Irizarry</u>, *supra*, pág. 923. Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta y la asistencia médica de una persona, según la posición social de su familia, así como la educación e instrucción del alimentista. Cuando el alimentista es menor de edad, los alimentos también comprenden su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales específicas. 31 LPRA Sec. 7531.[3]

La obligación alimentaria está expresamente consignada en el Código Civil de 2020. Así, el Artículo 558 de dicho cuerpo establece que el hijo tiene derecho a recibir alimentos por parte de ambos progenitores. 31 LPRA Sec. 7104. De igual forma, el Artículo 658 del aludido código establece que están obligados recíprocamente a proporcionarse alimentos, los ascendientes y descendientes. 31 LPRA Sec. 7541.

Este derecho a recibir alimentos es personalísimo, imprescriptible, continuo e indivisible. El mismo, no puede ser objeto de transacción, renuncia, gravamen o embargo. Tampoco puede compensarse la cantidad adeudada por concepto de alimentos con la que el alimentista deba al alimentante.[4]

En cuanto a los hijos no emancipados el Artículo 589 del Código Civil define la patria potestad como el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos,

---

[3] En cuanto a las atenciones de previsión, el Código Civil de 2020 establece que estas incluyen los seguros de salud, de vida y de incapacidad, los planes de inversión para sufragar estudios secundarios o procurar una formación profesional o vocacional, así como la prestación de las garantías o medidas cautelares necesarias para lograr el desarrollo integral del alimentista. Además, si el alimentista alcanza la mayoría de edad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo de las circunstancias particulares de cada caso.
[4] 31 LPRA, Sec. 7535.

desde que estos nacen hasta que alcanza la mayoría de edad u obtienen su emancipación. 31 LPRA Sec. 7241. Sobre aquellos hijos sujetos a la patria potestad, el Artículo 590 del Código Civil establece los deberes y facultades de los padres para con sus hijos por razón de la patria potestad, entre los que se encuentra el deber de alimentarlos y proveerles lo necesario para su desarrollo y formación integral.[5] Sobre esta obligación de alimentar, ambos progenitores responden solidariamente. Así, si uno de ellos no cumple con su obligación de pago, el otro puede iniciar la acción de cobro a nombre del alimentista, esté o no bajo su custodia, o a nombre propio como codeudor solidario. 31 LPRA Sec. 7544.

La obligación de alimentar depende de la condición económica del padre alimentante y es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente. Umpierre Matos v. Juelle, Mejía 203 DPR 254 (2019). Ahora bien, el deber de alimentar a los hijos menores de edad no está subordinado a uno u otro artículo de nuestro Código Civil, sino a la relación paternofilial legalmente establecida. Santiago, Maisonet v. Maisonet Correa, 187 DPR 550, 561 (2012) citando a Chévere Mouriño v. Levis Goldstein, 152 DPR 492 (2000).

No obstante, en atención a ese alto interés público sobre asuntos relativos a alimentos a menores de edad, fue creada mediante legislación la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, 8 LPRA sec. 501, et seq. (Ley Núm. 5). El propósito medular de la citada ley es velar que los padres cumplan las obligaciones que derivan del deber de alimentar a sus hijos menores de edad. De León Ramos v. Navarro Acevedo, 195 DPR 157(2016).

En esa dirección el Art. 18 de la Ley 5, *supra*, instituye el procedimiento a seguirse para la fijación de alimentos. En lo pertinente establece que: "[E]l Examinador celebrará la vista sobre pensión

---

[5]  31 LPRA Sec. 7242, inciso (b).

alimenticia, y dentro de un término de veinte (20) días, someterá al tribunal un informe con sus recomendaciones el cual contendrá determinaciones de hechos y conclusiones de derecho". Ahora bien, será fundamental la aplicación de Guías Mandatorias, para la determinación, revisión y modificación de las pensiones alimentarias en conformidad con las facilidades económicas de cada progenitor y las necesidades y aptitudes educacionales del alimentista. Santiago, Maisonet v. Maisonet Correa, *supra*, a las págs. 562-563.

-B-

El cálculo de la pensión alimentaria

De conformidad con el Artículo 19 de la Ley Orgánica de la Administración para el Sustento de Menores, *supra*, se promulgó el *Reglamento: Guías mandatorias para computar las pensiones alimentarias en Puerto Rico* (en adelante Guías Mandatorias). Este artículo, establece que:

> "[E]n todo caso en que se solicite la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatorio que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en esta sección.
>
> Si el tribunal o el Administrador, según sea el caso, determinara que la aplicación de las guías resultara en una pensión alimentaria injusta o inadecuada, así lo hará constar en la resolución o sentencia que emita y determinará la pensión alimentaria luego de considerar, entre otros, los siguientes factores:
>
> (1) Los recursos económicos de los padres del menor;
>
> (2) La salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales;
>
> (3) El nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;
>
> (4) Las consecuencias contributivas para las partes cuando ello sea práctico y pertinente, y;
>
> (5) Las contribuciones no monetarias de cada padre al cuidado y bienestar del menor."

La parte III de las Guías Mandatorias exponen las instrucciones a seguirse para computar la pensión alimentaria. Así, explica cómo debe realizarse: la determinación de ingreso bruto de la persona custodia y la no custodia, la imputación de ingresos y cuando se hará, el cómputo del

ingreso negó mensual y del ingreso neto combinado, la cantidad que cada alimentista requiere para cubrir sus necesidades básica, la determinación de la pensión alimentista básica para cada alimentista, el ajuste a la pensión básica y el cómputo de la pensión alimentaria suplementaria.[6]

Al fijar la cuantía de la pensión, el tribunal de instancia no está limitado a considerar sólo la evidencia testifical o documental sobre los ingresos, pudiéndose con tal propósito considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de las propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. Franco Restro v. Rivera Aponte, 187 DPR 137, 150-151 (2012).

-C-

Evidencia pertinente es toda aquella prueba que tiende a hacer la existencia de un hecho, que tiene consecuencias para la adjudicación de la acción más probable o menos probable.[7] Toda evidencia pertinente es admisible, a menos que por imperativo constitucional, por disposición de ley o de las Reglas de Evidencia, se disponga lo contraria.[8] De igual manera, alguna evidencia pertinente se puede excluir cuando aplique alguna de las reglas de exclusión reconocidas en nuestro ordenamiento o por virtud de la Regla 403 de Evidencia.[9]

Nuestro ordenamiento jurídico ciertos mecanismos para ayudar a una parte afectada por la admisión o exclusión errónea de prueba. Así, la Regla 104 de Evidencia establece que la parte afectada por la admisión errónea de evidencia debe someter una objeción oportuna, específica y

---

[6] Véanse Artículos 8-20 de las Guías Mandatorias.
[7] 32 LPRA Ap. VI R. 401.
[8] 32 LPRA Ap. VI R. 402.
[9] La aludida regla dispone que los tribunales tienen discreción para excluir prueba pertinente, a pesar de la ausencia de una regla de exclusión, si su valor probatorio queda sustancialmente superado por un: (a) riesgo de causar perjuicio indebido; (b) riesgo de causar confusión; (c) riesgo de causar desorientación del Jurado; (d) dilación indebida de los procedimientos, e (e) innecesaria presentación de prueba acumulativa. 32 LPRA Ap. VI, R 403.

correcta o una moción para que se elimine del récord la prueba erróneamente admitida. De igual manera, la aludida regla establece que, en el caso de exclusión de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba.[10]

Como regla general, no se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que la parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 y el Tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita. [11]

### III

Tal como mencionamos, en su primer señalamiento de error el señor Martínez reclama que se equivocó el tribunal al aceptar y acoger como propia la exclusión de los estados bancarios decretada en el caso por el EPA. A los fines de impugnar esta determinación, argumenta que los estados bancarios que no se le permitió utilizar para impugnar los ingresos que la recurrida reportó son documentos cuya autenticidad no puede ser cuestionada. De igual forma, señala que durante la audiencia procedió a ofrecer los documentos como evidencia y "[d]e hecho, se ofreció [a] cargarlos al sistema de videoconferencia para ser presentados en pantalla, de manera tal que tanto las partes como los abogados y el propio EPA tuviera constancia de qué documento se aludía.". Añade ante estos argumentos, que la negativa del EPA de permitirle utilizar los estados

---

[10] 32 LPRA Ap. VI, R, 104.
[11] 32 LPRA Ap. VI, R. 105 (A).

bancarios mancilla "el simple derecho procesal y debido proceso de ley del compareciente."

También, tras citar lo concerniente las Reglas 104 y 105 de evidencia, aduce que el que no se hubiera cargado o subido los mismos previo a la audiencia según ordenado, no debió ser fundamento para impedirle utilizarlos, pues no se trata de una evidencia sorpresa que la recurrida no conociera. Además, asevera que el ofrecimiento de prueba realizado durante la vista ante el EPA justificaba la admisión de los estados bancarios, habiéndose cometido error al excluirse estos.

Hemos evaluado concienzudamente el legajo apelativo y los documentos que contiene; particularmente, hemos estudiado con detenimiento la transcripción que recoge los procedimientos celebrados ante el EPA. Así hecho, resolvemos confirmar la determinación de exclusión de prueba cuestionada en el primer señalamiento de error.

Tal cual previamente enunciamos, como regla general no se dejará sin efecto una determinación de exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que: la parte perjudicada con la admisión o exclusión errónea hubiera satisfecho con los requisitos de objeción , fundamento y oferta de prueba y que el Tribunal que considere el señalamiento sobre error en la exclusión estime que la evidencia excluida fue un factor decisivo o sustancial en la decisión cuya revocación se solicita.

La transcripción de la audiencia ante el EPA refleja que la señora Visconti, a preguntas de la representación legal del señor Martínez, admitió que en los estados bancarios que produjo como parte del descubrimiento de prueba aparecían unos depósitos o transferencias de ATH Móvil que reflejaban unos ingresos sustancialmente más altos a los reportados por ella como ingresos. Sin embargo, durante su testimonio, además de aclarar que ya no recibe transferencias por ATH Móvil, explicó que una porción de tales

depósitos o transferencias correspondían a depósitos por ingresos de su mamá, quien ofrecía clases de natación y utilizaba su cuenta bancaria para recibir estos para esos momentos. Igualmente, declaró que para ese momento ayudaba a su mamá con dicho negocio utilizando su cuenta bancaria para emitir pagos referentes a este, que ya no lo hacía para evitar problemas y admitió que durante un periodo en el que estuvo desempleada recibió por tres meses ingresos por brindar clases de natación los sábados y ayuda de su familia mediante la compra de alimentos. [12]

Una evaluación de lo antes consignado, así como de la totalidad de la evidencia desfilada ante el EPA nos lleva a concluir que la exclusión de los estados bancarios que se pretendía someter como evidencia no tuvo un efecto sustancial sobre el dictamen de pensión final emitido. Más allá de reclamar la autenticidad de los documentos que pretendía utilizar para impugnar el testimonio de la señora Visconti, alegar que la prueba excluida por ser una de "impugnación" no tenía que ser anunciada, ni era sorpresiva y que no albergaba duda que "de haberse permitido presentar en la vista los estados bancarios provistos por la propia recurrida, la determinación del cómputo del EPA hubiese variado, afectando así la resolución judicial", el apelante no aporta discusión alguna que nos permita alcanzar una conclusión distinta.

De otra parte, al discutir el segundo error señalado, el señor Martínez plantea que la determinación del EPA de reconocer en el cálculo de la pensión el gasto de vivienda fue una equivocada, ya que, según la propia recurrida admitió, no produjo evidencia alguna sobre este gasto. Asimismo, señala que tal hecho inclusive fue reconocido por el propio EPA, cuando hizo alusión durante la audiencia a la orden emitida durante la vista de pensión provisional. Por otro lado, argumenta que las Guías Mandatorias

---

[12] Véase, págs. 49-50, 53, 66, 70-73, 77 y 107-108 de la *Transcripción de regrabación Vista rebaja pensión alimentaria.*

en su Artículo 20 establecen que se tomará en consideración la cantidad mensual que **en efecto** se paga o tiene que pagarse de vivienda.

Mas allá de tales argumentos, se limita a indicar que, "si bien puede entender que los menores tienen una residencia, requiere que el gasto que se le está computando cuente con un fundamento de prueba mínimo." Así, ante estos planteamientos, reclama error de parte del foro primario al sostener ambas determinaciones. Los breves argumentos sometidos por el señor Martínez no nos convencen sobre la comisión del error señalado. Estos, ni siquiera atienden propiamente las expresiones vertidas por el EPA en el escolio 1 de su informe- según transcritas durante la exposición del tracto procesal del caso de esta sentencia- en las que explica las distintas razones que guiaron su decisión. Tales palabras, ciertamente contemplan y se emitieron en protección de los mejores intereses de los menores para los cuales se calculó la pensión.[13] Igualmente, ante los livianos planteamientos del apelante en cuanto a su segundo señalamiento de error, consideramos importante destacar que, tal cual el EPA resaltó en el aludido escolio, la solicitud de revisión alimentaria peticionada por el apelante descansó en una alegada merma de sus ingresos y no en un cambio en los gastos del hogar custodio de sus hijos menores. No obstante, y pese a ello, durante la audiencia se centró en impugnar los ingresos de la señora Visconti y si los pagos de la hipoteca se estaban efectuando y no en probar que su condición económica hubiese cambiado drásticamente, lo cual es indispensable para considerar y justificar su solicitud de revisión de pensión alimentaria.

Al evaluar la **totalidad** de la prueba desfilada no estimamos- y el apelante mediante sus argumentos tampoco nos colocó en posición de así hacer- que la exclusión de los estados bancarios tuviera un efecto sustancial

---

[13] Recordemos que un tribunal pudiera aplicar una norma de derecho distinta si entiende que sus determinaciones previas son erróneas **y podría causarse una grave injusticia**. Berkan et al. v. Mead Johnson Nutrition, 204 DPR 183 (2020) citando a Cacho Pérez v. Hatton Gotay y otros, 195 DPR 1 (2016). (Énfasis suplido)

en el cálculo de la pensión establecida. De igual manera, valoramos que el reconocimiento del gasto de vivienda efectuado por el EPA es uno razonable, dentro de la discreción que tiene en la ejecución de su función y emitido en protección de los intereses de los menores que se benefician de la pensión a ser calculada. Por consiguiente, encontramos correctas las determinaciones del EPA impugnadas por el apelante, así como la decisión del foro primario de acoger el informe que las contiene.

Antes de concluir, debemos consignar que aunque en el cuerpo de su escrito el apelante indica que recurre no solo de la *Resolución y Orden* mediante la cual se acogieron las recomendaciones emitidas por el EPA en su informe, sino del dictamen posterior que emitió para dar por cumplida la orden de mostrar causa que el foro primario emitió el 4 de mayo de este año, el señalamiento y la discusión de sus errores se concentró en atacar las determinaciones del informe del EPA y el acogimiento que de estas hizo el TPI mediante la *Resolución y Orden*. La decisión de dar por cumplida la orden de mostrar causa es una determinación interlocutoria cuya revisión está guiada bajo los criterios de la Regla 40 de nuestro Reglamento. Examinada la misma bajo el crisol de estos, no encontramos motivos por los cuales esta deba ser revocada. En consecuencia, también la confirmamos.

IV

Por los fundamentos antes expuestos, confirmamos la *Resolución y Orden* emitida el 19 de mayo de 2023, y notificada el día 24, por el Tribunal de Primera Instancia, Sala Superior de Bayamón en la causa de epígrafe. Igualmente, confirmamos la *Orden* emitida por el foro primario con fecha del 9 de junio de 2023, notificada el día 13.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones