Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MARÍA V. DE ECHEGARAY FORES<br><br>Apelante<br><br>v.<br><br>BENJAMÍN MARRERO RODRÍGUEZ<br><br>Apelado | KLAN202400715 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso número: C PE2016-0110 cons. con C PE2016-0140<br><br>Sobre: Lanzamiento de Propiedad, Usufructo, Daños y Perjuicios |
| BENJAMÍN MARRERO RODRÍGUEZ<br>Demandante<br><br>v.<br><br>MARÍA V. DE ECHEGARAY FORES<br><br>Demandada | | Caso número: C PE2016-0110 cons. con C PE2016-0140<br><br>Sobre: Interdicto Posesorio, Daños y Perjuicios |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparece la parte apelante, María V. De Echegaray Fores, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo, el 15 de abril de 2024, notificada al día siguiente. Mediante dicho dictamen, el foro primario le ordenó a María V. De Echegaray Fores a pagarle doscientos dólares ($200.00) mensuales o dos mil cuatrocientos dólares ($2,400.00) anuales en concepto de producto líquido de usufructo a la parte apelada, Benjamín Marrero Rodríguez, denegando a su vez

la solicitud de interdicto posesorio presentada por Benjamín Marrero Rodríguez y las de daños presentadas por ambas partes.

Por los fundamentos que exponemos a continuación, el dictamen apelado se revoca en parte y se confirma en parte. Veamos.

**I**

El 12 de mayo de 2016, María V. De Echegaray Fores (De Echegaray Fores o apelante) incoó una *Demanda* sobre lanzamiento de propiedad y conclusión del contrato de usufructo en contra de Benjamín Marrero Rodríguez (Marrero Rodríguez o apelado).[1] En el aludido escrito, alegó que era dueña en pleno dominio del siguiente bien inmueble:

> RUSTICA: Parcela marcada "H" en el plano de inscripción radicada en el Barrio Rio Arriba, t[é]rmino municipal de Arecibo, compuesta de uno punto novecientos cincuenta y siete cuerdas equivalentes a siete mil seiscientos noventa puntos cinco cero, cero, cero metros cuadrados (7, 690.5000). Sus lindes son: NORTE con Francisco Echegaray; SUR con la Carretera ciento cuarenta y seis (146): ESTE con la parcela "O" de la Autoridad de las Fuentes Fluviales de Puerto Rico; OESTE con la parcela "M" de la Autoridad de la Fuentes Fluviales de Puerto Rico.
>
> INSCRITA a los folios noventa y dos, vuelto y noventa y tres, Tomo histórico trescientos cuarenta y nueve, Finca catorce mil doscientos veintiuno, inscripciones segunda y tercera, sección primera de Arecibo, del Registro.
>
> Codificación catastral: 134-000-002-35-000.

De Echegaray Fores arguyó que, el 10 de octubre de 2012, otorgó un contrato de usufructo con Marrero Rodríguez sobre los dos mil metros cuadrados (2,000 m/c) del suelo de la propiedad en cuestión, en donde este último construyó una vivienda. Adujo que el contrato de usufructo realizado por ambos requería una serie de condiciones sobre convivencia de paz, las cuales fueron violentadas por Marrero Rodríguez mediante amenazas, hostilidad, desasosiegos

---

[1] Apéndice del recurso, págs. 1-3. Junto a su reclamación, De Echegaray Fores incluyó los siguientes documentos: (1) Contrato de Usufructo, con fecha del 10 de octubre de 2012; (2) Orden de Protección del recurso OPA-2016-045813, con fecha del 2 de marzo de 2016 hasta el 2 de septiembre de 2016; (3) Certificación de diligenciamiento, con fecha del 2 de marzo de 2016. Véase, Apéndice del recurso, págs. 4-12.

y humillaciones. Arguyó que, debido a estas violaciones, los incumplimientos sobre los acuerdos de gastos de utilidades y los actos de dominio que pretendía realizar Marrero Rodríguez sobre la propiedad, acudió al Tribunal de Primera Instancia en donde se emitió una Orden de Protección a su favor en el caso OPA 2016-045813. Por tal razón, solicitó al foro primario la conclusión del contrato de usufructo habido entre ambos y que se ordenara el lanzamiento de Marrero Rodríguez de la propiedad.[2]

Por su parte, Marrero Rodríguez presentó una *Contestación a Demanda*.[3] En el aludido escrito, esbozó sus alegaciones responsivas y levantó varias defensas afirmativas. Arguyó que le pagó a De Echegaray Fores la cantidad de cinco mil dólares ($5,000.00) por su derecho de usufructo. Del mismo modo, adujo que De Echegaray Fores lo acusó falsamente de acciones no realizadas por este, con el plan de sacarlo de la propiedad construida y poder enriquecerse de la misma.

El 20 de junio de 2016, Marrero Rodríguez presentó una *Demanda y Solicitud de Interdicto Posesorio e Interdicto Provisional y Permanente* en contra De Echegaray Fores, Edwin Adorno Ramos (Adorno Ramos) y John Doe sobre interdicto posesorio, interdicto provisional y permanente, así como daños y perjuicios.[4] En el referido escrito, alegó que subscribió un contrato de usufructo con De Echegaray Fores el 10 de octubre de 2012. Arguyó que esta había reconocido, mediante el aludido contrato, que este había edificado sobre la finca antes mencionada, unas columnas de hormigón, en donde se encontraba edificada una pequeña estructura de madera

---

[2] Surge del expediente judicial, que para la fecha de la presentación de la *Demanda,* se encontraba en vigor una Orden de Protección a favor de De Echegaray Fores, en contra de Marrero Rodríguez en el caso OPA 2016-045813, con vigencia hasta el 2 de septiembre de 2016.

[3] Apéndice del recurso, págs. 13-15.

[4] Íd., págs. 16-29. Junto a su reclamación, Marrero Rodríguez incluyó los siguientes documentos: (1) Contrato de Usufructo, con fecha del 10 de octubre de 2012; (2) copia de un croquis. Véase, Apéndice del recurso, págs. 30- 34.

techada con "zinc", con divisiones propias para ser utilizada como vivienda. Adujo que el costo de la referida vivienda provino exclusivamente del peculio de este. Del mismo modo, alegó que, del contrato antes mencionado, surgía que el usufructo reconocido sería de carácter vitalicio, de forma gratuita y sin que medie precio o compensación alguna.

Además, Marrero Rodríguez alegó que, debido a unas actuaciones realizadas por De Echegaray Fores y Adorno Ramos, este había sido usurpado de manera forzosa de la propiedad construida. Por tal razón, le solicitó al foro de origen que emitiera un interdicto preliminar y permanente, así como un interdicto posesorio en contra De Echegaray Fores y Adorno Ramos para que se les ordenara entregar la propiedad antes descrita. Del mismo modo, solicitó al foro primario el resarcimiento en daños y perjuicios.

Luego de varios trámites procesales, incluyendo la consolidación de los casos C PE2016-0110 y C PE2016- 0140, se celebró una vista en su fondo. Evaluadas las posturas de las partes y conforme a la prueba recibida y creída, el 15 de abril de 2024, notificada al día siguiente, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa.[5] En particular, desglosó las siguientes determinaciones de hechos:

1. El señor Marrero y la señora De Echegaray se casaron en 1995 [y] se divorciaron en 1997, en el [C]aso [Núm.] CDI1996-1170.

2. Luego del divorcio, las partes continuaron conviviendo en una casa adjudicada al señor Marrero, localizada en el barrio Domingo Ruiz en Arecibo.

3. En el año 2002, la señora De Echegaray adquirió mediante escritura de donación, de su señor padre, una propiedad localizada en la carretera 146, km 1.1, del [b]arrio Río Arriba de Arecibo, Puerto Rico.

---

[5] Apéndice del recurso, págs. 49-74.

4. Las partes siguieron viviendo en la casa ubicada en el barrio Domingo Ruiz hasta el año 2003, cuando se mudaron a la propiedad ubicada en la carretera 146, antes descrita.

5. En el año 2006, el señor Marrero comenzó a edificar una estructura en el inmueble propiedad de la señora De Echegaray, con el consentimiento de ella.

6. [L]a edificación consistió en unas columnas con piso de cemento, y sobre ellas una casa de madera.

7. La construcción de esta edificación fue costeada en su totalidad por el señor Marrero y culminó en el año 2007.

8. El costo de la edificación fue de $15,000.

9. Una vez culminada la construcción, la casa fue rentada inmediatamente.

10. La señora De Echegaray percibió exclusivamente los ingresos de las rentas desde que se completó la construcción de la casa y por todo el tiempo que estuvo rentada la estructura.

11. La señora De Echegaray testificó que la casa construida fue alquilada a su hijo a cambio de un canon mensual de $350.

12. El señor Marrero no le reclamó a la señora De Echegaray dinero alguno de las rentas percibidas por ella, ni de las decisiones sobre arrendamiento desde el año 2007 hasta finales del año 2012.

13. En mayo de 2011, la señora De Echegaray y el señor Marrero dejan de vivir en [el] mismo lugar. El señor Marrero se fue a vivir a una égida en Castañer, Lares.

14. El señor Marrero emitió un cheque el 4 de septiembre de 2012 por la cantidad de $5,000, dirigido a Jessica M. Quiñones, quien es hija de la señora De Echegaray, debido a una necesidad económica y se lo envió por correo postal al lugar donde residía.

15. En otra ocasión[,] el señor Marrero volvió a ayudar a Jessica Quiñones, enviando un cheque de $3,000.

16. El 10 de octubre de 2012[,] el señor Marrero y la señora De Echegaray firmaron, mediante declaración jurada, un contrato de usufructo ante el notario Sixto Román Torres.

17. En este contrato de usufructo[,] las partes estipularon que la señora De Echegaray, dueña de la propiedad, concedió autorización al Sr. Marrero para construir ciertas mejoras, que según se especificó eran unas columnas y una plataforma de hormigón, sobre la cual se edificó una estructura de madera para utilizarse como vivienda. El usufructo concedido sobre dos mil metros de terreno donde ubica dicha estructura sería de forma vitalicia y gratuita.

18. En la declaración jurada del 29 de enero de 2016 y admitida en evidencia en el presente caso, se indica y citamos: "Después de año y medio le pregunté si quería vivir en la finca[,] en la casa pequeña que está al lado. [É]l me dijo que sí. Le dije que yo necesitaba cinco mil para dárselos a mi hija. Que con ese dinero él podía vivir en la finca sin pagar renta[,] pero que nos teníamos que dividir pagos y una serie de cosas. Lo quise hacer bien en donde hicimos un contrato [de] usufructo el día 10 de octubre de 2012. Benjamín estuvo de acuerdo y lo firmamos con un abogado. [É]l se mudó para la finca para el mes de diciembre de 2012[".]

19. Las partes no contrataron a ningún profesional ingeniero o agrimensor para la mensura de los dos mil metros, antes ni después del contrato de usufructo.

20. Aunque no contrataron un profesional para la mensura, el señor Marrero llegó el día de la firma del contrato de usufructo con un plano de la finca objeto del usufructo.

21. En diciembre de 2012[,] el señor Marrero se mudó a la casa que había construido en el lugar del usufructo.

22. El señor Marrero estuvo en posesión de la casa construida sobre el usufructo desde diciembre de 2012 al 28 de enero de 2016.

23. Así las cosas, el 28 de enero de 2016, ocurrió un incidente entre la Sra. De Echegaray y el Sr. Marrero. Todo comenzó con una disputa por un racimo de plátanos que había cortado el Sr. Marrero.

24. Declaró el Sr. Marrero que él tenía ese racimo reservado para unas amistades, pero la Sra. De Echegaray lo tomó sin pedir permiso y no lo quiso devolver.

25. A raíz de lo anterior, la Sra. De Echegaray declaró que fue insultada y amenazada por el Sr. Marrero, quien tenía un machete en mano y la persiguió hasta el portón que separaba las residencias.

26. Por causa de este incidente[,] el Tribunal expidió una orden de protección *ex parte* y ordenó el desalojo del señor Marrero de la propiedad objeto del usufructo.

27. En la vista celebrada el 2 de marzo de 2016, el señor Marrero se allanó a que la orden de protección se extendiera por seis meses adicionales, hasta el 2 de septiembre de 2016.

28. La Sra. De Echegaray habló con el señor Adorno para que se quedara en la casa objeto del usufructo con el propósito de que hubiera alguien cerca en caso de una emergencia.

29. El señor Marrero no autorizó que el señor Adorno pernoctara en la casa objeto del usufructo.

30. El señor Adorno habitó la casa del usufructo por espacio de seis semanas, desde abril de 2016, hasta que se culminó el juicio criminal contra el Sr. Marrero, del cual resultó no culpable.

31. El señor Adorno llevó para la casa una cama de posiciones, colchón, mesas, olla, libros y ropa.

32. La señora De Echegaray quitó el cilindro de la cerradura a la puerta de entrada de la casa objeto de usufructo y contrató a unas personas para que bajaran las cosas del señor Marrero a la parte de abajo de la casa.

33. El señor Marrero pudo recoger sus pertenencias en dos ocasiones. La primera vez pudo recoger parte de su ropa, dos cajas de herramientas y un televisor. La segunda vez recogió otras pertenencias.

34. El señor Marrero declaró que[,] desde que desalojó la propiedad hasta el momento en que se hizo el acta notaria[,]l se desaparecieron herramientas valoradas en $7,000. Estas no fueron desglosadas.

35. El señor Marrero declaró que tuvo daños económicos de $5,000 ya que tuvo que mudarse y comprar muebles. Estos no fueron desglosados.

36. Además, declaró Marrero que[,] a partir de todo lo ocurrido, tuvo que visitar al psiquiatra Elías

Jiménez, quien le dio tratamiento y que nunca había recibido tratamiento para una condición mental.

37. El señor Marrero estuvo de tres a cuatro años en una casa prestada y tuvo que mudarse de esa propiedad ya que fue vendida.

38. El señor Marrero recibe $615 del seguro social.

39. La Sra. De Echegaray se ha opuesto a que el señor Marrero de mantenimiento a la propiedad objeto del usufructo.

40. El huracán María deterioró la edificación construida en el lugar del usufructo.[6]

En primer lugar, el foro primario concluyó que la causa de acción en daños presentada por De Echegaray Fores no procedía, pues no se presentó prueba en el juicio en su fondo sobre los alegados daños. Denegó también la acción de daños interpuesta por Marrero Rodríguez por el mismo fundamento. Referente a la extinción o resolución del usufructo constituido entre De Echegaray Fores y Marrero Rodríguez, el foro sentenciador resolvió que, en virtud del Código Civil de Puerto Rico de 1930, estatuto de aplicación a los hechos del caso, pues el usufructo se constituyó en el año 2012, este usufructo no se extinguía por el mal uso de la cosa usufructuada. El foro *a quo* concluyó que no le asistía la razón a De Echegaray Fores en su solicitud de resolución de contrato de usufructo válidamente constituido, pues el Código Civil de Puerto Rico de 1930 no permitía su extinción por el mal uso del usufructuario sobre el bien usufructuado.

Así las cosas, el Tribunal de Primera Instancia concluyó que, conforme a la prueba recibida y creída en el juicio, la convivencia entre De Echegaray Fores y Marrero Rodríguez no era posible, debido al historial de disputas y altercados entre ellos, por lo que

---

[6] Apéndice del recurso, págs. 54-58.

denegó el concederle a Marrero Rodríguez el interdicto posesorio sobre el bien usufructuado.

El foro primario resolvió que procedía que De Echegaray Fores continuara en posesión de los dos mil metros cuadrados (2,000 m/c) de terreno objeto del usufructo, pero esta le debía pagar a Marrero Rodríguez doscientos dólares ($200.00) mensuales o dos mil cuatrocientos dólares ($2,400.00) anuales en concepto del producto líquido del usufructo que debían ser computados desde el mes de septiembre del 2016 y hasta que fallezca Marrero Rodríguez. Según el foro sentenciador:

> La señora De Echegaray testificó que, luego de la construcción de la casa objeto del usufructo, la alquiló a su hijo por $350 al mes. Además, véase la cláusula tres del contrato [de] usufructo. Así las cosas, el Tribual concluye que el producto líquido del usufructo mensual es $350, lo que representa $4,200 al año. Ahora bien, el Art. 448 también requiere que se descuenten los gastos de administración y mantenimiento del usufructo. Como se trata de un predio de terreno de 2,000 metros cuadrados, el Tribunal **estima** que estos gastos de administración y mantenimiento alcanzan $150 mensuales, lo que representa $1,800 al año. Véasela cláusula ocho del contrato de usufructo. (Énfasis nuestro).

Respecto a las restantes solicitudes de Marrero Rodríguez, el foro sentenciador las declaró No Ha Lugar.

En desacuerdo, el 1 de mayo de 2024, De Echegaray Fores presentó una moción de reconsideración.[7] Igualmente insatisfecho, Marrero Rodríguez sometió una solicitud de reconsideración.[8] Luego de presentadas las respectivas oposiciones,[9] el 24 de junio de 2024, notificada al día siguiente, el foro *a quo* emitió una *Resolución* mediante la cual declaró No Ha Lugar ambas solicitudes.[10]

Inconforme, el 29 de julio de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

---

[7] Apéndice del recurso, págs. 75-81.
[8] Íd., págs. 82-89.
[9] Íd., págs. 90-101.
[10] Íd., págs. 102-103.

Erró el Tribunal de Primera Instancia al aplicar el Artículo 448 del derogado Código Civil de Puerto Rico de 1930 y no aplicar el nuevo Código Civil de Puerto Rico de 2020[,] conforme al Artículo 1812 de las disposiciones transitorias.

Erró el Tribunal de Primera Instancia al no decretar la extinción del usufructo bajo los Artículos 917 y 910 del nuevo Código Civil de Puerto Rico de 2020.

De proceder la aplicación del derogado Código Civil de Puerto Rico de 1930, erró el Tribunal de Primera Instancia en el cómputo aritmético realizado para determinar el producto líquido del usufructo por ausencia de prueba de parte del apelado.

Erró el Tribunal de Primera Instancia al imponer el pago de costas a favor del apelado cuando [e]ste no prevaleció en sus reclamaciones.

Erró el Tribunal de Primera Instancia en la apreciación de la prueba testifical en [el] juicio al determinar que el apelado es un edificante de buena fe porque obtuvo el consentimiento de la apelante para construir, sin tomar en consideración que en el juicio el apelado declaró que obtuvo el consentimiento de la apelante, bajo su propia condición, de que la edificación sería para el beneficio de ella, cuando él no estuviera, para que generara ingresos de rentas, lo que constituye dolo en el consentimiento.

En cumplimiento con nuestras *Resoluciones* del 16 de agosto de 2024 y el 31 de octubre del mismo año, y luego de una prórroga a esos efectos, la parte apelada compareció mediante *Alegato de la Parte Promovida* el 27 de enero de 2025.

Con el beneficio de la comparecencia de las partes, la transcripción de la prueba oral, los autos originales, así como la prueba documental, procedemos a resolver.

## II

### A

El Código Civil de Puerto Rico de 2020, 31 LPRA sec. 11717, en su artículo 1812 establece que los actos y contratos celebrados bajo el Código Civil de Puerto Rico de 1930 que sean válidos con arreglo a ella surten todos sus efectos según la misma, con aquellas limitaciones establecidas en el nuevo Código. No obstante, los actos y contratos celebrados bajo el Código Civil de Puerto Rico de 1930

que resultan ineficaces bajo la referida legislación no adquieren validez por el hecho de que el nuevo Código disponga algo distinto con relación a su eficacia. *Íd.*

Por otro lado, Artículo 3 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3, y el Artículo 9 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5323, establecen el principio de la irretroactividad de las leyes. Bajo este principio las leyes no tendrán efecto retroactivo, si el estatuto no dispone expresamente lo contrario. *Íd.* De la misma forma, el artículo establece que en ningún caso podrá el efecto retroactivo de un estatuto perjudicar los derechos adquiridos al amparo de una legislación anterior. *Íd.*

A manera de excepción, en nuestro ordenamiento jurídico se permite la aplicación retroactiva de las leyes, "... por lo que la intención del legislador sobre tal efecto debe relucir del propio cuerpo normativo ya sea de forma tácita o expresa". *Díaz Ramos v. Matta Irizarry,* 198 DPR 916, 929 (2017).

**B**

El usufructo es el derecho de disfrutar de una cosa ajena, por la cual puedes percibir todos los productos, utilidades y ventajas que aquélla produzca, con la obligación de conservar su forma y sustancia, a no ser que el título de su constitución o la ley autoricen lo contrario. Artículo 396 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1501; *Hernández v. Tribl. Contribuciones*, 73 DPR 710, 718 (1952). Este derecho se constituye mediante ley, voluntad de las partes manifestado por actos realizados en vida o de última voluntad y por prescripción. Artículo 397 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1502. El Artículo 399 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1504, establece que los derechos y obligaciones a las cuales estará sujeto el usufructuario serán los que determinen en el título constitutivo del usufructo. De no estar

presentes o en insuficiencia de ellos, se observarán las disposiciones contenidas en el Código Civil.

En el Artículo 441 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1571, establece las instancias por las cuales el derecho de usufructo queda extinguido. Entre estas, el Código Civil esboza las siguientes:

(1) Por muerte del usufructuario.
(2) Por expirar el plazo por que se constituyó, o cumplirse la condición resolutoria consignada en el título constitutivo.
(3) Por la reunión del usufructo y propiedad en una misma persona.
(4) Por la renuncia del usufructuario.
(5) Por la pérdida total de la cosa objeto del usufructo.
(6) Por la resolución del derecho del constituyente.
(7) Por prescripción.

Por su parte, el Artículo 448 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1578, establece que el usufructo no se extingue por el mal uso de la cosa usufructuada. No obstante, si el abuso infiriese considerablemente con perjuicio al propietario, podrá éste pedir que se le entregue la cosa, obligándole al propietario pagar anualmente al usufructuario el producto líquido de la misma, después de deducir los gastos y el premio que se le asignare por su administración. *Íd.*

**C**

La Regla 44.1 de Procedimiento Civil de Puerto Rico de 2009, 32 LPRA Ap. V, R. 44.1, establece lo referente a la concesión de costas y honorarios de abogado(a) a favor de una parte. *Class Fernández v. Metro Health Care Management System, Inc.*, 2024 TSPR 63. Respecto a las costas, la aludida regla estable que:

(a) Su concesión. Las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

(b) Cómo se concederán. La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios en que se incurrió durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento de parte o mediante una certificación del abogado o de la abogada, y consignará que, según el entender de la parte reclamante o de su abogado o abogada, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiese impugnación, el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas. Cualquier parte que no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Apelaciones mediante el recurso de certiorari. De haberse instado un recurso contra la sentencia, la revisión de la resolución sobre costas deberá consolidarse con dicho recurso.

**D**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín,* supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.,* pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble,* 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín,* supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho

apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, nuestro Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011). De esa manera, los abogados y las abogadas tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* No puede quedar al arbitrio de la representación legal decidir qué disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo. Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

En su primer señalamiento de error la parte apelante nos indica que el Tribunal de Primera Instancia incidió al aplicar el Artículo 448 del derogado Código Civil de Puerto Rico de 1930, *supra*, y no aplicar el nuevo Código Civil de Puerto Rico de 2020, *supra*, conforme al Artículo 1812 de las disposiciones transitorias. En su segundo señalamiento de error la parte apelante nos señala que el foro primario erró al no decretar la extinción del usufructo bajo los Artículos 917 y 910 del nuevo Código Civil de Puerto Rico

de 2020, *supra*. Por estar relacionados entre sí, discutiremos los referidos señalamientos de error en conjunto.

En nuestro ordenamiento jurídico existe una prohibición a la aplicación retroactiva de las leyes, si el estatuto no dispone expresamente lo contrario.[11] Por otro lado, el artículo 1812 del Código Civil de Puerto Rico de 2020, *supra*, establece que los actos y contratos celebrados bajo el Código Civil de Puerto Rico de 1930, que sean válidos con arreglo a ella, surten todos sus efectos según la misma, con aquellas limitaciones establecidas en el nuevo Código.

En el caso ante nuestra consideración, surge del expediente judicial que la parte apelante y la parte apelada celebraron un contrato de usufructo el 10 de octubre de 2012. Por ende, no erró el Tribunal de Primera Instancia en aplicar las disposiciones del Código Civil de Puerto Rico de 1930, *supra*, para resolver la controversia respecto al bien usufructuado, pues el contrato que constituyó el derecho reconocido por ambos fue realizado con anterioridad a la vigencia del Código Civil de Puerto Rico de 2020, *supra*.

Por otro lado, el Artículo 448 del Código Civil de Puerto Rico de 1930, *supra*, establece que el usufructo no se extingue por el mal uso de la cosa usufructuada. No obstante, dispone que, si el abuso infiriese considerable perjuicio al propietario, podrá este pedir que se le entregue la cosa, obligándose a pagar anualmente al usufructuario el producto líquido de la misma, después de deducir los gastos y el premio que se le asignare por su administración.

No erró el foro de origen al aplicar el Artículo 448 del Código Civil de Puerto Rico de 1930, *supra*, a los hechos del caso, pues bajo este artículo no se extingue el usufructo por el mal uso de la cosa usufructuada, sino que se le establece un remedio al propietario del

---

[11] Véase, Artículo 3 del Código Civil de Puerto Rico de 1930, *supra*.

bien y al usufructuario, cuando el abuso infiriese considerable perjuicio al propietario. Conforme a los acontecimientos del caso ante nos, el Tribunal de Primera Instancia actuó correctamente en aplicar el Artículo 448 del Código Civil de Puerto Rico de 1930, *supra*, pues no procedía resolver el contrato de usufructo. Debido al historial de disputas y altercados entre ellos, la convivencia entre la parte apelante y la parte apelada no era posible. Por tal razón, no se cometieron los señalamientos de error uno y dos.

En su tercer señalamiento de error, la parte apelante nos señala que el foro sentenciador incidió en el cómputo aritmético realizado para determinar el producto líquido del usufructo por ausencia de prueba de parte del apelado.

Como mencionamos previamente, el Artículo 448 del Código Civil de Puerto Rico de 1930, *supra*, establece que el usufructo no se extingue por el mal uso de la cosa usufructuada por parte del usufructuario. En esta instancia, el Código Civil de Puerto Rico de 1930 establece que, si el abuso infiriese considerable perjuicio al propietario, éste podrá pedir que se le entregue la cosa, obligándose a pagarle anualmente al usufructuario el producto líquido de la misma, después de deducir los gastos y el premio que se le asignare por su administración.

Surge del dictamen apelado, que el foro sentenciador estableció que procedía que la parte apelante continuara en posesión de los dos mil metros cuadrados (2,000 m/c) de terreno objeto de usufructo, pero esta debía pagarle a la parte apelada doscientos dólares ($200.00) mensuales o dos mil cuatrocientos dólares ($2,400.00) anuales en concepto de producto líquido del usufructo.[12] El Tribunal fundamentó su decisión de la siguiente manera:

---

[12] Véase, Apéndice del recurso, págs.73-74.

> La señora De Echegaray testificó que, luego de la construcción de la casa objeto del usufructo, la alquiló a su hijo por $350 al mes. Además, véase la cláusula tres del contrato [de] usufructo. Así las cosas, el Tribual concluye que el producto líquido del usufructo mensual es $350, lo que representa $4,200 al año. Ahora bien, el Art. 448 también requiere que se descuenten los gastos de administración y mantenimiento del usufructo. Como se trata de un predio de terreno de 2,000 metros cuadrados, el Tribunal **estima** que estos gastos de administración y mantenimiento alcanzan $150 mensuales, lo que representa $1,800 al año. Véasela cláusula ocho del contrato de usufructo. (énfasis suplido).[13]

Luego de un examen sosegado del expediente que obra en autos y los planteamientos vertidos por ambas partes, resolvemos que erró el foro primario en el cálculo aritmético para determinar el producto líquido del usufructo. El Tribunal de Primera Instancia realizó dicho cómputo sin prueba que sustente las cuantías utilizadas. De la propia *Sentencia* surge que el foro juzgador las estimó sin haber recibido prueba al respecto. Incluso, la parte apelada reconoció en su alegato ante nos que el foro *a quo* no recibió la prueba correspondiente para poder determinar el valor de los dos mil metros cuadrados (2,000 m/c) objeto del usufructo. Según alegó, el valor de dicho bien es mayor al determinado por el foro sentenciador. Es decir, hubo ausencia de prueba para determinar el producto líquido del usufructo. Ante tal escenario, donde había que pasar prueba sobre las cuantías y valores necesarios para satisfacer el producto líquido del bien usufructuado, no procedía la estimación por parte del tribunal. Por tal razón, lo que procede es la celebración de una vista evidenciaria a tales efectos.

Por otro lado, la parte apelante nos plantea en su cuarto señalamiento de error que el Tribunal de Primera Instancia incidió al imponer el pago de costas a favor del apelado cuando este no prevaleció en sus reclamaciones. En nuestro ordenamiento jurídico, la imposición de costas está regulado por la Regla 44.1 de

---

[13] *Íd.* pág. 72.

Procedimiento Civil, *supra*. En la referida regla, se establece que las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia.

En el caso ante nuestra consideración, el foro de instancia emitió una *Sentencia* en contra de la parte apelante y a favor de la parte apelada.[14] En el referido dictamen, el foro primario le ordenó a la parte apelante a retener la posesión del bien usufructuado, pero debe pagarle a la parte apelada el valor del producto líquido del usufructo. De una lectura de la *Sentencia* apelada, surge claramente que el pleito de epígrafe se revolvió a favor de la parte apelada, pues esta disfrutará de su derecho a usufructo de forma líquida, prevaleciendo así en la acción. Recordemos que para prevalecer en un pleito, no es necesaria la concesión exacta de la súplica, sino que se le provea al reclamante lo que en Derecho procede, tal como este lo solicitó en su *Demanda*.

La parte apelante plantea en el quinto señalamiento de error asuntos que van dirigidos a la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Según esbozáramos, en consideración a la norma de corrección que cobija a las determinaciones realizadas por el foro primario, cuando una parte apelante señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, **la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario**. Por tanto, es tarea de la parte apelante presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo*. Si bien en el caso de autos la parte apelante sometió la transcripción de la prueba oral (TPO), esta incumplió crasamente con nuestras *Resoluciones* del 16 de agosto de 2024, 8 y 31 de octubre del mismo año. En lo

---

[14] Véase, Apéndice del recurso, págs. 73-74.

pertinente, en dichos dictámenes ordenamos lo siguiente: "Se dispone que cualquier alusión a la prueba testifical que se haga en los alegatos, deberán referirse a la línea y página correspondiente en la transcripción". Sin embargo, el *Alegato* presentado por la parte apelante el 4 de diciembre de 2024, además de ser escueto y carecer de planteamientos específicos que apoyen su contención, falló en hacer referencia directa a las porciones de la TPO que, según alegaba la apelante, ameritaban nuestra intervención. En vista de ello, no atenderemos el mencionado error, toda vez que la parte apelante no nos puso en posición para ello.

**IV**

Por las razones que anteceden, revocamos el dictamen apelado en cuanto al cálculo aritmético del usufructo en cuestión, por lo que devolvemos el caso al Tribunal de Primera Instancia para que celebre una vista evidenciaria para determinar el producto líquido del bien usufructuado. Por otro lado, confirmamos los demás extremos de la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones